1  Alycia A. Degen (SBN 211350)
   adegen@sidley.com
2  SIDLEY AUSTIN LLP
   555 West Fifth Street
3  Los Angeles, CA 90013
   Telephone:  (213) 896-6000
4  Facsimile:  (213) 896-6600

5  *Attorneys for Defendants Bayer HealthCare
   LLC; Bayer Essure, Inc.; and Bayer HealthCare*
6  *Pharmaceuticals, Inc.*

7  (Additional Counsel on Signature Page)

8

9              **UNITED STATES DISTRICT COURT**

10            **NORTHERN DISTRICT OF CALIFORNIA**

11                    **SAN FRANCISCO**

12

13  TANYA DE LA PAZ, an individual,            Case No. 3:15-cv-03995-WHA

14            Plaintiff,

15       vs.                                   **NOTICE OF RENEWED MOTION AND
                                               RENEWED MOTION TO DISMISS
                                               PLAINTIFF'S FIRST AMENDED**
16  BAYER HEALTHCARE LLC, a Delaware           **COMPLAINT; MEMORANDUM OF**
    corporation; BAYER ESSURE, INC., a         **POINTS AND AUTHORITIES IN**
17  Delaware Corporation; BAYER                **SUPPORT**
    HEALTHCARE PHARMACEUTICALS,
18  INC., a Delaware corporation; and DOES 1-  HONORABLE WILLIAM H. ALSUP
    10, inclusive,
19                                             Date:      December 17, 2015
            Defendants.                        Time:      8:00 a.m.
20                                             Place:     Courtroom 8, 19th Floor

21

22

23

24

25

26

27

28

**NOTICE OF RENEWED MOTION AND RENEWED MOTION**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on December 17, 2015 at 8:00 a.m., or as soon thereafter as counsel may be heard, in Courtroom 8 of the above-entitled Court, located at 450 Golden Gate Avenue, San Francisco, California 94102, Bayer HealthCare LLC, Bayer Essure, Inc., and Bayer HealthCare Pharmaceuticals, Inc. (collectively "Bayer") will and hereby do move to dismiss Plaintiff's First Amended Complaint [D.E. 21] ("FAC"), pursuant to Federal Rules of Civil Procedure 8, 9(b), and 12(b)(6).

The motion is based on the following grounds:

1.  Essure, the medical device at issue in this case, is a Class III device with premarket approval from the U.S. Food & Drug Administration ("FDA").  For that reason, federal law expressly preempts Counts I through X of Plaintiff's Complaint.  21 U.S.C. § 360k(a); *Riegel v. Medtronic, Inc.*, 552 U.S. 312 (2008).  Claims challenging the design, manufacture, or warnings of a device with premarket approval from FDA are expressly preempted.  Any exception must be premised on conduct that violates a requirement imposed by the FDA during the premarket approval process.  Here, however, Plaintiff's FAC fails to identify a single violation of a federal requirement that is connected in any causal way to Plaintiff herself.  The Court should therefore dismiss her FAC.

2.  To the extent Counts I through X are premised on allegations that Essure is "adulterated," or that its premarket approval is "invalid," FAC ¶¶ 9, 13-18, 43-50, 21 U.S.C. § 337(a) and *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341 (2001) impliedly preempt them because it is the exclusive province of the FDA to enforce FDA requirements, invalidate product approval, and determine whether a product is adulterated.  *See, e.g., Perez v. Nidek Co. Ltd.*, 711 F.3d 1109, 1120 (9th Cir. 2013); *Gile v. Optical Radiation Corp.*, 22 F.3d 540, 544 (3d Cir. 1994); *Cornwell v. Stryker Corp.*, No. 1:10-cv-66, 2010 WL 4641112, at *4 (D. Idaho Nov. 1, 2010); *Parker v. Stryker Corp.*, 584 F. Supp. 2d 1298, 1301 (D. Colo. 2008).

3.  The Court should also dismiss Plaintiff's FAC because all of her claims are barred by California's applicable two-year statute of limitations.  Cal. Civ. Proc. § 335.1.

4.      Plaintiff's FAC also should be dismissed because she fails to support any of her claims with the factual allegations required by Federal Rules 8 and 9(b).

5.      Plaintiff's strict liability design defect claims (Counts II and V) fail as a matter of law, because implanted prescription medical devices are "unavoidably unsafe" and therefore immune from design defect strict liability. *Brooks v. Medtronic, Inc*., 750 F.2d 1227, 1230-31 (4th Cir. 1984); *Hufft v. Horowitz*, 4 Cal. App. 4th 8, 13 (1992); *Artiglio v. Superior Court*, 22 Cal. App. 4th 1388, 1397 (1994).

Bayer's Motion is based on this Notice of Motion, its Memorandum of Points and Authorities, its Request for Judicial Notice and all attached exhibits, all other papers and pleadings on file, and argument of counsel at any hearing of this Motion.

Dated: November 9, 2015                       SIDLEY AUSTIN LLP


                                              By:   */s/ Alycia A. Degen*
                                                    Alycia A. Degen

                                                    Alycia A. Degen
                                                    SIDLEY AUSTIN LLP
                                                    555 West Fifth Street
                                                    Los Angeles, CA 90013
                                                    (213) 896-6682
                                                    (213) 896-6600 (fax)
                                                    adegen@sidley.com

                                                    Maja Eaton (*pro hac vice* to be filed)
                                                    Elizabeth Curtin (*pro hac vice* to be filed)
                                                    SIDLEY AUSTIN LLP
                                                    One South Dearborn
                                                    Chicago, IL 60603
                                                    (312) 853-7123
                                                    (312) 853-7036 (fax)
                                                    meaton@sidley.com
                                                    ecurtin@sidley.com

                                                    *Attorneys for Defendants Bayer HealthCare*
                                                    *LLC; Bayer Essure Inc.; Bayer HealthCare*
                                                    *Pharmaceuticals, Inc.*

# TABLE OF CONTENTS

**Page**

INTRODUCTION .................................................................................................. 1

BACKGROUND ................................................................................................... 3

    A.    Statutory And Regulatory Background.................................................... 3

        1.    The Rigorous Approval Process For Class III Devices ............................ 3

        2.    FDA Oversight Of PMA Device Labeling ................................. 4

        3.    Post-Approval Changes By PMA Supplement ......................................... 5

        4.    Enforcement Of FDA Requirements For Approved Devices ................... 5

        5.    FDA's Repeated Approval Of Essure Through The PMA Process.......... 5

    B.    Factual Background ............................................................................ 6

ARGUMENT ....................................................................................................... 7

I.    PLAINTIFF'S CLAIMS ARE EXPRESSLY PREEMPTED BY FEDERAL LAW. ........................................................................................... 7

    A.    Elements Of Express Preemption ......................................................... 7

    B.    Each Of Plaintiff's Claims Is Expressly Preempted. ............................. 8

II.    PLAINTIFF'S CLAIMS ARE IMPLIEDLY PREEMPTED. ....................................... 12

III.    THE APPLICABLE STATUTE OF LIMITATIONS BARS PLAINTIFF'S CLAIMS. ...................................................................................... 14

    A.    California's Statute Of Limitations Applies To Plaintiff's Claims. ................... 14

    B.    California's Two-Year Statute Of Limitations Bars Plaintiff's State Law Claims. .................................................................................... 17

IV.    PLAINTIFF FAILS TO STATE A CLAIM PURSUANT TO FEDERAL PLEADING STANDARDS........................................................................ 20

    A.    Plaintiff Fails To Adequately Plead Causation In Support Of Her Claims. ........ 20

    B.    Plaintiff Fails To State Her Fraud Claims With The Requisite Particularity........................................................................................ 21

V.    PLAINTIFF FAILS TO STATE A CLAIM FOR DESIGN DEFECT UNDER CALIFORNIA OR SOUTH CAROLINA STATE LAW. ............................ 22

CONCLUSION................................................................................................... 23

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Arthur v. Medtronic, Inc.*,
  No. 4:14-cv-52, 2014 WL 3894365 (E.D. Mo. 2014) ......................................................10, 12

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ...........................................................................................................7, 21

*Beavers-Gabriel v. Medtronic, Inc.*,
  15 F. Supp. 3d 1021, 1031 (D. Haw. 2014) ...........................................................8, 10, 12, 14

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ....................................................................................................2, 20, 21

*Blennis v. Hewlett-Packard Co.*,
  No. 07-cv-00333, 2008 WL 818526 (N.D. Cal. Mar. 25, 2008) .............................................12

*Brooks v. Medtronic, Inc.*,
  750 F.2d 1227 (4th Cir. 1984) ...............................................................................................23

*Buckman Co. v. Plaintiffs' Legal Comm.*
  531 U.S. 341 (2001)........................................................................................................ *passim*

*Cal. Sansome Co. v. U.S. Gypsum*,
  55 F.3d 1402 (9th Cir. 1995) ..................................................................................................18

*Carlton v. Herz Corp.*,
  No. 12-cv-07178, 2013 WL 394894 (C.D. Cal. Jan. 28, 2013) ........................................16, 17

*Chione v. Medtronic, Inc.*
  No. 14-cv-01043, 2015 WL 2151889 (S.D. Cal. May 7, 2015) ..................................... *passim*

*Clemens v. DaimlerChrysler Corp.*,
  534 F.3d 1017 (9th Cir. 2008) ................................................................................................18

*Cohen v. Guidant Corp.*,
  No. 05-cv-8070, 2011 WL 637472 (C.D. Cal. Feb. 15, 2011) ................................................11

*Cornwell v. Stryker Corp.*,
  No. 1:10-cv-66, 2010 WL 4641112 (D. Idaho Nov. 1, 2010) ............................................2, 13

*Crowley v. Peterson*,
  206 F. Supp. 3d 1038 (C.D. Cal. 2002) ..................................................................................19

*Damabeh v. 7-Eleven, Inc.*,
  No. 5:12-cv-1739, 2012 WL 4009503 (N.D. Cal. Sept. 12, 2012)..........................................22

*Deutsch v. Turner Corp.*,
   324 F.3d 692 (9th Cir. 2003) ...................................................................14, 15, 16

*Eidson v. Medtronic, Inc.*,
   981 F. Supp. 2d 868 (N.D. Cal. 2013) ...................................................................6

*Erickson v. Boston Scientific Corp.*,
   846 F. Supp. 2d 1085 (C.D. Cal. 2011) ...................................................16, 18

*Fields v. Legacy Health Sys.*,
   413 F.3d 943 (9th Cir. 2005) ...................................................................7

*First Intercontinental Bank v. Ahn*,
   798 F.3d 1149 (9th Cir. 2015) ...................................................................14

*Gile v. Optical Radiation Corp.*,
   22 F.3d 540 (3d Cir. 1994)...................................................................2, 13

*Gomez v. St. Jude Med. Diag Div. Inc.*,
   442 F.3d 919 (5th Cir. 2006) ...................................................................12

*Gustavson v. Wrigley Sales Co.*,
   961 F. Supp. 2d 1100 (N.D. Cal. 2013) ...................................................................6

*Hawkins v. Medtronic, Inc.*,
   No. 1:13-cv-00499, 2014 WL 346622 (E.D. Cal. Jan. 30, 2014)...........................................20

*Herrington v. Johnson & Johnson Consumer Cos., Inc.*,
   No. 09-cv-1597, 2010 WL 3448531 (N.D. Cal. Sept. 1, 2010)...........................................22

*Herron v. Smith & Nephew, Inc.*,
   7 F. Supp. 3d 1043 (E.D. Cal. 2014)...................................................................8, 9

*Horowitz v. Stryker Corp.*,
   613 F. Supp. 2d 271 (E.D.N.Y. 2009) ...................................................................10

*Houston v. Medtronic, Inc.*,
   957 F. Supp. 2d 1166 (C.D. Cal. 2013) ................................................... *passim*

*In re Hydroxycut Mkting and Sale Practices Litig.*,
   No. 09-md-2087, 2011 WL 3844217 (S.D. Cal. Aug. 29, 2011) ...........................................22

*Kearns v. Ford Motor Co.*,
   567 F.3d 1120 (9th Cir. 2009) ...................................................................7, 21, 22

*Kennedy v. Techtronic Ind. N. Am. Inc.*,
   No. 8:13-00871, 2014 WL 958035 (D. S.C. Mar. 10, 2014)...................................................16

*Malonzo v. Mentor Worldwide, LLC*,
   No. 14-cv-1144, 2014 WL 2212235 (N.D. Cal. May 28, 2014)...........................................11

-iii-

*Marolda v. Symantec Corp.*,
　　672 F. Supp. 2d 992 (N.D. Cal. 2009) ....................................................................21

*Martin v. Medtronic, Inc.*,
　　32 F. Supp. 3d 1026 (D. Ariz. 2014) ...............................................................10, 14

*Medtronic, Inc. v. Lohr*,
　　518 U.S. 470 (1996) ...............................................................................................4

*In re Medtronic*, *Inc. Sprint Fidelis Leads Prods. Liab. Litig.*,
　　623 F.3d 1200 (8th Cir. 2010) ....................................................................... *passim*

*In re Medtronic, Inc. Sprint Fidelis Leads Prods. Liab. Litig.*,
　　592 F. Supp. 2d 1147 (D. Minn. 2009)....................................................................1

*In re Mirena IUD Prods. Liab. Litig.*,
　　No. 7:14-cv-05229, 2015 WL 144214 (S.D.N.Y. Jan. 9, 2015)............................19

*Neilson v. Union Bank of California, N.A.*,
　　290 F. Supp. 2d 1101 (C.D. Cal. 2003) ................................................................21

*Nelson v. Int'l Paint Co.*,
　　716 F.2d 640 (9th Cir. 1983) ................................................................................17

*Nimtz v. Cepin*,
　　No. 08-cv-1294, 2011 WL 831182 (S.D. Cal. Mar. 3, 2011) ...........................10, 21

*Parker v. Stryker Corp.*,
　　584 F. Supp. 2d 1298 (D. Colo. 2008)........................................................2, 13, 21

*Perez v. Nidek Co. Ltd.*,
　　711 F.3d 1109 (9th Cir. 2013) ...........................................................................2, 13

*Pinsonneault v. St. Jude Med., Inc.*,
　　953 F. Supp. 2d 1006 (D. Minn. 2013)..................................................................12

*Platt Elec. Supply, Inc. v. EOFF Elec., Inc.*,
　　522 F.3d 1049 (9th Cir. 2008) ..............................................................................19

*Plumlee v. Pfizer, Inc.*,
　　No. 13-cv-00414, 2013 WL 4275519 (N.D. Cal. Aug. 2014) .........................17, 20

*Riegel v. Medtronic, Inc.*
　　451 F.3d 104 (2d Cir. 2006)....................................................................................4

*Riegel v. Medtronic, Inc.*,
　　552 U.S. 312 (2008).......................................................................................*passim*

*Riley v. Cordis Corp.*
　　625 F. Supp. 2d 769 (D. Minn. 2009)................................................................2, 12

-iv-

*S.A. Empresa De Viacao Aerea Rio Gradense v. Boeing Co.*,
   641 F.2d 746 (9th Cir. 1981) ...................................................................15

*Senah, Inc. v. Xi'an Forstar S&T Co.*,
   No. 13-cv-4254, 2014 WL 6065895 (N.D. Cal. Nov. 12, 2014) .............................22

*Simmons v. Boston Scientific Corp.*,
   No. 12-cv-7962, 2013 WL 1207421 (C.D. Cal. Mar. 25, 2013)...............................9

*Sprewell v. Golden State Warriors*,
   266 F.3d 979 (9th Cir 2001) ....................................................................7

*Stengel v. Medtronic Inc.*,
   704 F.3d 1224 (9th Cir. 2013) ................................................................14

*Talbott v. C.R. Bard, Inc.*,
   865 F. Supp. 37 (D. Mass. 1994) .............................................................13

*Theranos, Inc. v. Fuisz Pharma LLC*,
   876 F. Supp. 2d 1123 (N.D. Cal. 2012) .....................................................15

*White v. Stryker Corp.*,
   818 F. Supp. 2d 1032 (W.D. Ky. 2011).......................................................11

*Wolicki-Gables v. Arrow Int'l, Inc.*,
   641 F. Supp. 2d 1270 (M.D. Fla. 2009), *aff'd*, 634 F.3d 1296 (11th Cir. 2011) ..................12

**State Cases**

*Artiglio v. Superior Court*,
   22 Cal. App. 4th 1388 (1994) ................................................................22

*Ashland Chem. Co. v. Provence*,
   129 Cal. App. 3d 790 (Cal. Ct. App. 1982) .............................................16, 17

*Bennett v. Suncloud*,
   56 Cal. App. 4th 91 (Cal. Ct. App. 1997) ..................................................16

*Blanco v. Baxter Healthcare Corp.*,
   158 Cal. App. 4th 1039 (2008) ...............................................................12

*Davies v. Krasna*,
   14 Cal. 3d 502 (1975) .........................................................................19

*Evraets v. Intermedics Intraocular, Inc.*,
   29 Cal. App. 4th 779 (1994) .................................................................12

*Fox v. Ethicon Endo-Surgery, Inc.*,
   35 Cal. 4th 797 (2005) ........................................................................18

*Hufft v. Horowitz,*
   4 Cal. App. 4th 8 (1992) ...........................................................................................22

*Mattingly v. Hubbard,*
   No. 07-cv-12014, 2008 WL 3895381 (Ky. Cir. Ct. July 30, 2008)................................12

*McCann v. Foster Wheeler LLC,*
   225 P.3d 516 (Cal. 2010) .........................................................................................15

*Norgart v. Upjohn Co.,*
   21 Cal. 4th 383 (1999) ............................................................................................17

*Pooshs v. Philip Morris USA, Inc.,*
   51 Cal. 4th 788 (2011) ......................................................................................17, 19

*Rita M. v. Roman Catholic Archbishop,*
   187 Cal. App. 3d 1453 (1986) ..................................................................................18

**Federal Regulations**

21 C.F.R. § 10.30 ...........................................................................................................5

21 C.F.R. § 803.50 .........................................................................................................5

21 C.F.R. § 814.29 .........................................................................................................5

21 C.F.R. § 814.39 .........................................................................................................5

21 C.F.R. § 814.44 .........................................................................................................4

21 C.F.R. § 814.84 .........................................................................................................5

**Federal Statutes**

21 U.S.C. § 337(a) .............................................................................................5, 13, 14

21 U.S.C. § 360c ......................................................................................................3, 4

21 U.S.C. § 360e ..................................................................................................2, 4, 5

21 U.S.C. § 360k(a) ...................................................................................................3, 8

Federal Food, Drug, and Cosmetic Act (FDCA) ................................................ *passim*

**State Statutes**

Cal. Code Civ. Proc. § 335.1 ...................................................................1, 15, 16, 17

S.C. Code Ann. § 15-3-530...........................................................................................16

1

**Rules**

Fed. R. Civ. P. 9(b) .......................................................................................3, 7, 21, 22

Fed. R. Civ. P. 12(b)(6)....................................................................................................7

Fed. R. Civ. P. 8 ..............................................................................................................23

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**INTRODUCTION**

In this product liability case, Plaintiff Tanya De La Paz cannot make out a claim against Bayer HealthCare LLC, Bayer Essure Inc., or Bayer HealthCare Pharmaceuticals, Inc., (collectively "Bayer"), because each of her claims is preempted by federal law, barred by the applicable statute of limitations, and unsupported by factual allegations sufficient to comply with federal pleading standards or state law.

Plaintiff, a South Carolina resident, alleges that her physician attempted to place Essure®, a permanent contraceptive medical device, into her fallopian tubes in July 2012 but perforated her fallopian tube.  Her doctor then made a second attempt to place the device in September 2012, but Plaintiff alleges she experienced "daily pain and heavy bleeding . . ." resulting in removal of a portion of the device and her right fallopian tube in February 2013. First Am. Compl. [D.E. 21] ("FAC") ¶¶ 71-79.  In her FAC, filed more than two years later on September 1, 2015, Plaintiff asserts ten counts against Bayer for various product liability, negligence, warranty, and fraud claims.  Plaintiff's claims are barred by California's applicable two-year statute of limitations.  *see* Cal. Civ. Proc. § 335.1; *Chione v. Medtronic, Inc.* No. 14-cv-01043, 2015 WL 2151889, at *4 (S.D. Cal. May 7, 2015).

Essure is a Class III medical device whose design, manufacturing method, and labeling (including physician Instructions for Use and Patient Information Booklet) were specifically approved by the U.S. Food and Drug Administration ("FDA") pursuant to the agency's Premarket Approval ("PMA") process.  The PMA process subjects medical devices to the highest level of scrutiny that exists in the federal regulatory regime.  *See, e.g., In re Medtronic, Inc. Sprint Fidelis Leads Prods. Liab. Litig.*, 592 F. Supp. 2d 1147, 1150 (D. Minn. 2009), *aff'd*, 623 F.3d 1200 (8th Cir. 2010).  Unlike the approval process for pharmaceuticals or "devices [that] enter the market through § 510(k)" of the Federal Food, Drug, and Cosmetic Act ("FDCA") (which only requires a showing of "substantial equivalence" to another device), "[p]remarket approval is a 'rigorous' process" that requires submission of a "multivolume application," after which the FDA grants approval "only if it finds there is a 'reasonable assurance' of the device's 'safety and effectiveness.'"  *Riegel v. Medtronic, Inc.*, 552 U.S. 312,

317-18 (2008) (quoting 21 U.S.C. § 360e(d)).  Thereafter, a manufacturer is forbidden from making, "without FDA permission, changes in design specifications, manufacturing processes, labeling, or any other attribute, that would affect safety or effectiveness."  *Id*. at 319 (citing 21 U.S.C. § 360e(d)(6)(A)(i)).

In light of the FDA's exacting scrutiny and oversight of Class III PMA devices, courts routinely recognize that claims involving such devices fall within the express preemption provisions of the Medical Device Amendments ("MDA") to the FDCA.  A plaintiff can only bring a state law claim against a Class III PMA device if she alleges a violation of the PMA requirements for that device, and that such violation directly caused her injuries.  *See, e.g., id*. at 315-22 (rejecting state law claims as expressly preempted); *In re Medtronic*, 623 F.3d at 1205-1208 (same); *Houston v. Medtronic, Inc.*, 957 F. Supp. 2d 1166, 1173-75 (C.D. Cal. 2013) (same).  Here, despite her kitchen-sink pleading, Plaintiff fails to allege any violation of an Essure PMA requirement that actually caused her injuries, and her claims directly conflict with the FDA's repeated determination that Essure is safe and effective when accompanied by FDA-specified warnings and instructions.  As such, federal law squarely preempts her claims.

Enforcement of the FDCA is committed solely to the FDA, so to the extent Plaintiff attempts to enforce alleged duties to the FDA, or bring a claim on the basis that Essure is "adulterated" or the Essure PMA is "invalid," FAC ¶¶ 9, 13-18, 43-50, her claims are also impliedly preempted.  *See, e.g.*, *Buckman Co. v. Plaintiffs' Legal Comm*. 531 U.S. 341, 353 (2001); *Perez v. Nidek Co. Ltd.*, 711 F.3d 1109, 1120 (9th Cir. 2013); *Gile v. Optical Radiation Corp.*, 22 F.3d 540, 544 (3d Cir. 1994); *Cornwell v. Stryker Corp.*, No. 1:10-cv-66, 2010 WL 4641112, at *4 (D. Idaho Nov. 1, 2010); *Parker v. Stryker Corp.*, 584 F. Supp. 2d 1298, 1301 (D. Colo. 2008).  Indeed, for medical devices approved through the PMA process, there is only "a narrow gap through which a plaintiff's state-law claim must fit if it is to escape express or implied preemption."  *Riley v. Cordis Corp.* 625 F. Supp. 2d 769, 777 (D. Minn. 2009).  None of Plaintiff's claims fit within this gap.

In any event, Plaintiff fails to plead the factual allegations necessary to support her claims under *Iqbal/Twombly* standards, let alone with the particularity required to support her fraud

claims under Federal Rule 9(b).  She likewise fails to state a cognizable claim for design defect under state law (Counts II and V).

## BACKGROUND

### A.    Statutory And Regulatory Background

Congress enacted the Medical Device Amendments ("MDA") to the Federal Food, Drug, and Cosmetic Act ("FDCA") in 1976.  The MDA granted the FDA authority to regulate medical devices, and created a comprehensive, statutory "regime of detailed federal oversight."  *Riegel*, 552 U.S. at 316.  In enacting the MDA, Congress sought to ensure that medical devices would be readily available to treat patients in need of life-saving or disability-averting care.  Specifically recognizing the "undu[e] burden[]" imposed by differing state regulation, Congress adopted a "general prohibition on non-Federal regulation" of medical devices by incorporating an express-preemption clause into the MDA.  H.R. Rep. No. 94–853, at 45 (1976).  That provision specifies that no state may impose "any requirement" relating to the safety or effectiveness of a medical device that "is different from, or in addition to, any requirement applicable . . . to the device" under federal law.  21 U.S.C. § 360k(a).

### 1.    The Rigorous Approval Process For Class III Devices

Under the MDA, different types of devices receive different levels of scrutiny from the FDA.  Devices that "support[] or sustain[] human life" or "present[] a potential unreasonable risk of illness or injury" are designated "Class III" devices.  21 U.S.C. § 360c(a)(1)(C)(ii).  An innovative Class III device, such as Essure, must receive Premarket Approval from the FDA before it may be brought to market, and "incur[s] the FDA's strictest regulation."  *Buckman*, 531 U.S. at 344.

The PMA process is the most exacting form of FDA review for medical devices.  The FDA "grants premarket approval only if it finds there is a 'reasonable assurance' of the device's 'safety and effectiveness.'"  *Riegel*, 552 U.S. at 318 (quoting 21 U.S.C. § 360e(d)); *accord In re Medtronic*, 623 F.3d at 1211.  To obtain FDA approval via the PMA process, a manufacturer

> must submit a detailed PMA application that contains full reports of all investigations of the safety and effectiveness of the device; a full statement of the components, ingredients, properties, and

> principles of operation of the device; a full description of the methods used in the manufacture and processing of the device; information about performance standards of the device; samples of the device; specimens of the proposed labeling for the device; and any other relevant information.

*Riegel v. Medtronic, Inc.* 451 F.3d 104, 109 (2d Cir. 2006) (quoting 21 U.S.C. § 360e(c)), *aff'd* 552 U.S. 312 (2008).  The FDA rigorously scrutinizes PMA applications, "'weig[hing] any probable benefit to health from the use of the device against any probable risk of injury or illness from such use.'"  *Riegel*, 552 U.S. at 318 (quoting 21 U.S.C. § 360c(a)(2)(C)).[1]  If the agency is not satisfied with the information provided, it can demand more.  *See id*. (citing 21 U.S.C. § 360e(c)(1)(G)).  The FDA may also refer the application to a panel of outside experts.  *See id.* (citing 21 C.F.R. § 814.44(a)).  If the FDA decides that the device's design, manufacturing methods, or labeling should be revised, it can require such revisions prior to approval.  *See id.* at 319 (citing 21 C.F.R. § 814.44(e)).  In short, "[p]remarket approval is a 'rigorous' process."  *Id.* at 317 (quoting *Medtronic, Inc. v. Lohr,* 518 U.S. 470, 477 (1996)).

### 2.   FDA Oversight Of PMA Device Labeling

As part of the PMA process, FDA also reviews a device's proposed labeling, which includes the Instructions for Use (intended for physicians) and Patient Information Booklet.[2]  "The FDA evaluates safety and effectiveness under the conditions of use set forth on the label," and "must determine that the proposed labeling is neither false nor misleading" before granting approval.  *Id*. at 318 (citing 21 U.S.C. §§ 360c(a)(2)(B), 360e(d)(1)(A)).  Once a device has received approval, a manufacturer cannot make changes to the labeling without FDA permission, 21 U.S.C. §§ 360e(d)(6)(A)(i), and proposed changes must be submitted, and FDA must approve

---

[1]  As the Supreme Court explained in *Riegel*, juries are ill-equipped to perform this cost-benefit analysis because they "see[] only the cost[s]" of a device—that is, its potential to cause harm— and are "not concerned with its benefits" because "the patients who reaped those benefits are not represented in court."  552 U.S. at 325.

[2]  *See* Bayer's Request for Judicial Notice ("RJN," filed concurrently herewith) at 4 (FDA, "PMA Labeling") ("Copies of all proposed labeling for the device must be included in the PMA submission." and "labeling may include prescription use restrictions, information for use (including indications, effects, routes, methods, and frequency and duration of administration; and any relevant hazards, contraindications, side effects, and precautions), instructions for installation and operation, and any information, literature, or advertising that constitutes labeling under Part 201(m) of the FD&C Act."); RJN at 4 ("Device Labeling") (labeling "extends to posters, tags, pamphlets, circulars, booklets, brochures, instruction books, direction sheets, fillers, etc.").

them, under "largely the same criteria" as the initial application.  *Riegel*, 522 U.S. at 319 (citing 21 U.S.C. § 360e(d)(6), 21 C.F.R. § 814.39(c)).

### 3.    Post-Approval Changes By PMA Supplement

The FDA's regulatory role does not end with approval of an initial PMA application. "Once a device has received premarket approval, the MDA forbids the manufacturer to make, without FDA permission, changes in design specifications, manufacturing processes, labeling, or any other attribute, that would affect safety or effectiveness."  *Id.* (citing 21 U.S.C. § 360e(d)(6)(A)(i)).[3]  To make such a change "[t]he applicant . . . must submit, and FDA must approve, an application for supplemental premarket approval, to be evaluated under largely the same criteria as an initial application."  *Id.* (citing 21 U.S.C. § 360e(d)(6), 21 C.F.R. § 814.29(c)).

### 4.    Enforcement Of FDA Requirements For Approved Devices

The FDA has extensive and exclusive enforcement authority under the FDCA.  Congress has specified that all actions to enforce the FDCA "shall be by and in the name of the United States."  *See* 21 U.S.C. § 337(a).  Although "citizens may report wrongdoing and petition the agency to take action,"  *Buckman*, 531 U.S. at 349 (citing 21 C.F.R. § 10.30), there is no private right of action under the FDCA, *id.* at 349 n.4.  Consistent with the agency's exclusive power to enforce the FDCA, the FDA has the authority to investigate violations of the Act and "has at its disposal a variety of enforcement options that allow it to make a measured response" to any wrongdoing that it uncovers.  *Id.* at 349.  Those remedies include "injunctive relief and civil penalties; seizing the device; and pursuing criminal prosecutions."  *Id.* (internal citations omitted).

### 5.    FDA's Repeated Approval Of Essure Through The PMA Process

FDA approved Essure through the PMA process in 2002, and has since granted numerous

---

[3]  The MDA also imposes post-approval reporting obligations on the manufacturer of an approved device.  FDA regulations require a manufacturer "to inform the FDA of new clinical investigations or scientific studies concerning the device" and "to report incidents in which the device may have caused or contributed to death or serious injury, or malfunctioned in a manner that would likely cause or contribute to death or serious injury if it recurred."  *Riegel*, 552 U.S. at 319 (citing 21 C.F.R. §§ 803.50(a), 814.84(b)(2)).

1   supplemental approvals, including as recently as June 2015.[4]  The FDA has repeatedly reviewed

2   and approved Essure's design, construction, manufacturing, warnings, instructions for use and

3   patient information, other labeling, testing, and training,[5] and the FDA's approval of the device

4   remains in full force and effect today, as it was in 2012 at the time of Plaintiff's procedure.[6]

5   FDA has never suspended or revoked its approval of Essure.

6   **B.    Factual Background**

7          Plaintiff alleges that in July 2012, her physician attempted to place an Essure device into

8   her fallopian tubes, but it "perforated her fallopian tube causing bleeding." FAC ¶¶ 71-72.  In

9   September 2012, her physician again "attempt[ed] to insert the device," *id*. ¶ 73, but in

10  December 2012, Plaintiff's confirmation test revealed that "[t]he right micro-insert . . . was

11  stretched or possibly broken." *Id*. ¶ 75.  She also alleges that "[a]fter the device was implanted,

12  Plaintiff started experiencing severe bleeding, and constant, daily pain." *Id*. ¶ 74.  In February

13  2013, "Plaintiff underwent surgery to remove the right fallopian tube and the broken pieces of

14  the right micro-insert." *Id*. ¶ 76.

15         Because Bayer has "manufactured, sold, distributed, marketed, and promoted" Essure, *id*.

16  ¶ 33, Plaintiff asserts ten causes of action against Bayer for manufacturing defect (Count I);

17  design defect (Count II); negligence (Count III); failure to warn (Count IV); strict liability

18  (Count V); breach of implied warranty (Count VI); breach of express warranty (Count VII);

19  negligent misrepresentation (Count VIII); fraudulent misrepresentation (Count IX); and fraud by

20  concealment (Count X).  In support of these claims, Plaintiff alleges that Essure is "adulterated,"

21  ───────────────
    [4]  *See* Compl. ¶¶ 37-40; RJN, Ex. A (FDA, Essure System PMA Supplements).  As set forth in
22  Bayer's Request for Judicial Notice, filed concurrently herewith, all exhibits referenced in this
    Memorandum are publicly available on FDA's website, and the Court may take judicial notice of
23  those exhibits.  *See* RJN; *see also, e.g., Gustavson v. Wrigley Sales Co.*, 961 F. Supp. 2d 1100,
    1113 n.1 (N.D. Cal. 2013) ("a court may take judicial notice of . . . matters of public record,"
    including documents "available on the FDA's website"); *Eidson v. Medtronic, Inc.*, 981 F. Supp.
24  2d 868, 878-79 (N.D. Cal. 2013) (taking judicial notice of documents that "appear on the FDA's
    public website," including PMA approval letters).
25  [5]  *See* RJN, Ex. B (FDA, Premarket Approval Order for the Essure System); RJN, Ex. C
26  ("Summary of Safety and Effectiveness Data" for Essure System); RJN, Ex. D (FDA, Essure
    "Health Care Provider Instructions for Use"); RJN, Ex. E (ESS305 Post-Approval Study: 12
27  month interim report).

    [6]  *See, e.g.,* RJN, Ex. F (FDA, "Essure Labeling Information for patients and health care
28  providers").
    ───────────────

that despite repeated and uninterrupted FDA approval, its PMA is "invalid," *id.* ¶¶ 9, 13-18, 43-50, and that directly contrary to FDA's approval, Essure is "unreasonably dangerous" in its manufacture, design, warnings, and testing, *see id.* ¶¶ 110, 121, 129-30, 133, 137, 147, 156, 160, 164, 174, 181.  Plaintiff also alleges that Bayer made various "warranties" regarding Essure, but does not allege which, if any, of these alleged representations Plaintiff or her physician ever saw or relied upon, nor whether those representations deviate from language specifically approved by the FDA through the PMA process with regard to Essure.  *See id.* ¶¶ 92-102.[7]

## ARGUMENT

A Rule 12(b)(6) motion to dismiss should be granted if a plaintiff is unable to articulate "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Id.* at 545.  "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*).  The Court is "not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint," *Sprewell v. Golden State Warriors*, 266 F.3d 979, 990 (9th Cir 2001) (citations omitted), or any "unwarranted inferences."  *Fields v. Legacy Health Sys.*, 413 F.3d 943, 950 n.5 (9th Cir. 2005). Additionally, claims sounding in fraud must be pled with particularity pursuant to Federal Rule 9(b).  *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009).

## I.   PLAINTIFF'S CLAIMS ARE EXPRESSLY PREEMPTED BY FEDERAL LAW.

### A.   Elements Of Express Preemption

The MDA's express preemption provision provides:

> [N]o State or political subdivision of a State may establish or
> continue in effect with respect to a device intended for human use
> any requirement – (1) which is different from, or in addition to,
> any requirement applicable under this chapter to the device, and

---

[7]  Plaintiff also repeatedly alleges that Bayer failed to adequately train physicians and entrusted them with hysteroscopes, *id.* ¶¶ 10, 51-69, 82-89, but these allegations do not appear to relate to any of Plaintiff's causes of action.  *See id.* ¶¶ 107-185.  In any event, Plaintiff does not allege if, or how, Bayer's alleged training or entrusting of hysteroscopes caused any of her injuries.

> (2) which relates to the safety or effectiveness of the device or to any other matter included in a requirement applicable to the device under this chapter.

21 U.S.C. § 360k(a); *accord, Riegel*, 552 U.S. at 316. Pursuant to this provision, courts follow a "two-step framework for determining whether a state law claim is subject to preemption by the MDA." *Herron v. Smith & Nephew, Inc*., 7 F. Supp. 3d 1043, 1048 (E.D. Cal. 2014). "First, has the federal government established requirements applicable to the medical device? . . . The second step is to determine whether plaintiff's state common-law claims are based upon California requirements with respect to the device that are 'different from, or in addition to' the federal ones, and that relate to safety and effectiveness." *Id*. (internal quotations omitted).

Where, as here, the FDA approved a medical device through the PMA process, the Federal Government has established requirements applicable to the device, satisfying the first step in the preemption analysis. *Riegel*, 552 U.S. at 322-23 ("Pre-market approval . . . imposes 'requirements' under the MDA" regarding safety and effectiveness); *accord Herron*, 7 F. Supp. 3d at 1048 ("This first step is plainly met by the PMA process here, as pre-market approval imposes requirements under the MDA, and they are specific to individual devices") (internal quotations omitted); *Houston*, 957 F. Supp. 2d at 1176 (same).

On the second step, a plaintiff can only avoid express preemption by pleading facts to (1) show a violation of FDA "requirements related to [the device], and (2) establish[] a causal nexus between the alleged injury and the violation." *Houston v. Medtronic, Inc.*, 957 F. Supp. 2d 1166, 1174 (C.D. Cal. 2013) (internal quotations omitted). "In other words, any claim that a medical device 'violated state tort law notwithstanding compliance with the relevant federal requirements' is expressly preempted." *Beavers-Gabriel v. Medtronic, Inc*., 15 F. Supp. 3d 1021, 1031 (D. Haw. 2014) (quoting *Riegel*, 552 U.S. at 330).

### B.    Each Of Plaintiff's Claims Is Expressly Preempted.

As explained above, Essure has repeatedly received FDA approval through the PMA process, through which the Federal Government established specific requirements for the safety and effectiveness of Essure, including its design, manufacturing, testing, labeling and accompanying warnings. *See supra*, Background § A.5; *see also* FAC ¶¶ 36-39. Accordingly,

-8-

the first step of the express preemption analysis is satisfied.  *See, e.g., Riegel*, 552 U.S. at 322-23; *Herron*, 7 F. Supp. 3d at 1048; *Houston*, 957 F. Supp. 2d at 1176.

On the second step, each of Plaintiff's claims is premised on conclusory allegations that, notwithstanding FDA's approval of Essure through the PMA process, the device is "unreasonably dangerous" in its manufacturing, design, warnings, and testing.  *See* FAC ¶¶ 110 (alleging manufacturing defect because Bayer "introduced a product into the stream of commerce which is dangerous and unsafe," and that is "unreasonably dangerous"), 121 (alleging design defect because "the design or formulation of the Essure is more dangerous than a reasonably prudent consumer would expect"), 129-30 (alleging negligence because Bayer "failed to use reasonable care in designing Essure" and "the risks created by Essure are unreasonably greater than that of other contraceptives"), 133 (alleging failure to warn because Essure is "unreasonably dangerous" and "its labeling fails to adequately warn consumers" of its risks), 137 (alleging failure to warn because "Essure was defective and unreasonably dangerous . . . in that it contained warnings insufficient to alert Plaintiff to the dangerous risks"), 147, 149-50 (alleging strict liability because Essure "was defective in design or formulation in that . . . it was unreasonably dangerous," and included "inadequate warnings" and "inadequate pre-market testing"), 156 (alleging breach of implied warranty because Essure was "unreasonably dangerous and unfit for the ordinary purpose for which it was used"), 160 (alleging breach of express warranty because "Essure is not safe or effective and may produce serious side effects"), 164 (alleging negligent misrepresentation because "Essure is not safe and is dangerous to the health of its users"), 174 (alleging fraudulent concealment because of Essure's "propensity to cause serious physical harm"), 181 (alleging fraud by concealment because "Essure was dangerous and likely to cause serious health consequences").

Plaintiff does not allege in support of any of these claims, however, that Essure deviated from the PMA requirements set forth by the FDA, as she must to assert a state law claim "parallel" to the federal requirements.  *Houston*, 957 F. Supp. 2d 1176; *Simmons v. Boston Scientific Corp.*, No. 12-cv-7962, 2013 WL 1207421, at *4 (C.D. Cal. Mar. 25, 2013) ("a plaintiff must allege that the defendant 'violated a particular federal specification referring to the

1    device at issue,' or identify specific PMA requirements that have been violated"); *Nimtz v.*

2    *Cepin*, No. 08-cv-1294, 2011 WL 831182, at *4 (S.D. Cal. Mar. 3, 2011) (dismissing claims as

3    preempted because "plaintiff has not set forth that [defendant] failed to comply with the PMA

4    process").  Instead, she attempts to impose state law requirements "different from, or in addition

5    to" the federal requirements applicable to Essure; her claims are no more than conclusory

6    allegations that Essure "violated state law *notwithstanding compliance with* the relevant federal

7    requirements," such that each of her claims is expressly preempted.  *Riegel*, 552 U.S. at 330

8    (emphasis added); *Beavers-Gabriel*, 15 F. Supp. 3d at 1031 (same); *Arthur v. Medtronic, Inc.*,

9    No. 4:14-cv-52, 2014 WL 3894365, at *3 (E.D. Mo. 2014) (same); *c.f. In re Medtronic*, 623 F.3d

10   at 1208 (where state law claims would require "a finding that would be contrary to the FDA's

11   approval of the PMA," those state law claims are expressly preempted).

12        While Plaintiff does allege (without any link to her causes of action) that Essure was

13   manufactured at some unspecified time with "non-conforming material," without "pre-sterile and

14   post-sterile cages," "at an unlicensed facility," and "without a license," FAC  ¶ 16; *see also id*. ¶¶

15   18, 89, she does not allege that any of these alleged manufacturing issues affected her device or

16   that they relate in any way to her injuries.  Similarly, she alleges various "warranties" and

17   "representations" that Bayer purportedly made, *id*. ¶¶ 91-102, but does not allege which, if any,

18   of these alleged representations she ever saw or relied upon, or that they in any way caused her

19   injuries.  Accordingly, even if any of these allegations could be read as supporting certain causes

20   of action, where, as here, Plaintiff offers no nexus to her own injuries, her claims remain

21   expressly preempted.  *See, e.g., Horowitz v. Stryker Corp.*, 613 F. Supp. 2d 271, 282 (E.D.N.Y.

22   2009) (dismissing state law claims as expressly preempted because "in order to survive

23   preemption under the MDA a plaintiff must demonstrate a cognizable link between the

24   defendant's federal violations and plaintiff's injury," which plaintiff did not); *Beavers-Gabriel*,

25   15 F. Supp. 3d at 1040 (dismissing claims as preempted because "Plaintiffs provide no facts or

26   arguments tying the failure to submit reports of adverse events to the FDA to a failure to warn

27   Plaintiffs and Plaintiff's physicians"); *Martin v. Medtronic, Inc.*, 32 F. Supp. 3d 1026, 1043 (D.

28   Ariz. 2014) (dismissing claim as preempted, because "although plaintiffs have alleged that

-10-

defendants failed to warn the FDA about adverse events, they have not alleged how that failure

to warn caused or contributed to their damages or injuries"); *Cohen v. Guidant Corp.,* No. 05-cv-

8070, 2011 WL 637472, at *2 (C.D. Cal. Feb. 15, 2011) (dismissing claims as preempted where

plaintiff failed to "link[]" federal requirements "to a defect in his specific pacemaker that was

caused by Defendants violating FDA regulations"); *Malonzo v. Mentor Worldwide, LLC,* No. 14-

cv-1144, 2014 WL 2212235, at *3 (N.D. Cal. May 28, 2014) (dismissing claims as preempted

because "[a]ny failure to report [plaintiff's] injuries or any defects with her implants could not

have *caused* her injury") (emphasis in original); *White v. Stryker Corp.*, 818 F. Supp. 2d 1032,

1039-40 (W.D. Ky. 2011) (dismissing state law claims as expressly preempted because

complaint did not allege that product "failure plausibly arises from the violation of an

identifiable federal standard that also supports a state law claim," where "Plaintiff does not

allege that the recall pertains to the particular device that was implanted in him").

Moreover, any claims based on "warranties" and "misrepresentations" that Bayer

allegedly made are expressly preempted for the additional reason that they track statements

specifically approved by the FDA in Essure's required product labeling and even posted on

FDA's website pages concerning Essure. *Compare, e.g.*, FAC ¶ 91 (listing alleged warranties)

*with* RJN, Ex. G (Essure Patient Information Booklet) at 1 ("consider Essure permanent birth

control"), 4 (Essure "[d]oes not require surgery," is right for those who "would like to stop

worrying," and "is a permanent birth control procedure"), 5 (Essure is "non-surgical," and "an

Essure Confirmation Test will verify that the inserts are placed correctly so that you can rely on

Essure for birth control,"), 7 ("Essure is a permanent method of birth control"), 12 ("zero (0)

pregnancies were reported" in Essure clinical studies), 15 (directly comparing the efficacy of

Essure to other forms of birth control, including tubal ligation).  Plaintiff does not, and cannot,

allege that any of Bayer's alleged "warranties" or "misrepresentations" are violative of, different

from, or inconsistent with, those statements that FDA has approved through the PMA process.

Accordingly, her claims amount to nothing more than allegations that Bayer violated state law

"notwithstanding compliance with the relevant federal requirements," and thus remain expressly

1   preempted.[8] *Riegel*, 552 U.S. at 330; *Beavers-Gabriel*, 15 F. Supp. 3d at 1031; *Arthur*, 2014 WL

2   3894365, at *3. *See also Pinsonneault v. St. Judge Med., Inc.*, 953 F. Supp. 2d 1006, 1019 (D.

3   Minn. 2013) ("[T]o the extent that plaintiffs' breach of express warranty claims are based on

4   representations stated on an FDA-approved label or on statements that were otherwise approved

5   or mandated by the FDA, such claims are preempted"); *Riley*, 625 F. Supp. 2d at 786 (dismissing

6   fraudulent and negligent misrepresentation claims where "the label approved by the FDA"

7   contained a safety and efficacy statement related to the challenged statement, such that plaintiff's

8   "claims, if successful, would plainly impose on [defendant] a requirement different from the

9   requirements that the FDA has imposed").[9]

10  **II.    PLAINTIFF'S CLAIMS ARE IMPLIEDLY PREEMPTED.**

11          To the extent any of Plaintiff's claims are premised on her allegations that Essure is

12  "adulterated" and its PMA rendered "invalid," FAC ¶¶ 9, 13, 43-44, 50, or that Bayer failed to

13  report adverse events to the FDA, *id.* ¶¶ 14, 18, 43, 44, 81, her claims are additionally impliedly

---

14  [8]  Plaintiff's warranty claims would fail in any event under California law for lack of privity, as
she alleges doctors, not patients, purchase Essure from Bayer. Compl. ¶ 67; *Blanco v. Baxter*

15  *Healthcare Corp.*, 158 Cal. App. 4th 1039, 1058 (2008) (privity required in an action for breach
of either express or implied warranty); *see also Evraets v. Intermedics Intraocular, Inc.*, 29 Cal.

16  App. 4th 779, 788 (1994) (granting demurrer because "[i]t is settled law in California that privity
between the parties is a necessary element to recover on a breach of an implied warranty of

17  fitness for the buyer's use") (quotations omitted); *Blennis v. Hewlett-Packard Co.*, No. 07-cv-
00333, 2008 WL 818526, at *3 (N.D. Cal. Mar. 25, 2008) ("Privity of contract is required to

18  state a claim for breach of warranty under California law.").

    [9]  Plaintiff further alleges that Bayer failed to adequately train physicians and provided

19  physicians with hysteroscopes, Compl. ¶¶ 12, 53-71, 85-90, but these allegations do not appear
to plausibly relate to any of Plaintiff's claims. Even if they did, Essure's PMA-approved

20  Instructions for Use specifically include instructions regarding placement of the Essure device
and the use of hysteroscopic equipment. *See* RJN, Ex. D (Health Care Provider Instructions For

21  Use) at 4-5. Moreover, Essure's PMA required a Post Marketing Study which was used to
"determine the effectiveness of . . . physician training, awareness, training materials, and

22  labeling," and which was submitted, and approved, through a PMA Supplement. *See* RJN, Ex. E
(ESS305 Post-Approval Study) at 3-1. Plaintiff does not allege *any* deviation from the

23  instructions and training that FDA has approved. As such, any claim based on these allegations
would again seek to assert a claim that requires "a finding that would be contrary to the FDA's

24  approval of the PMA . . . ." *In re Medtronic*, 623 F.3d at 1208, or that Bayer "violated state tort
law notwithstanding compliance with the relevant federal requirements," *Arthur*, 2014 WL

25  3894365, at *3. *See also Gomez v. St. Jude Med. Diag Div. Inc.*, 442 F.3d 919, 931 (5th Cir.
2006) (federal law preempts state-law claims that manufacturer's "training [was] inadequate or

26  incomplete"); *Wolicki-Gables v. Arrow Int'l, Inc.*, 641 F. Supp. 2d 1270, 1291 (M.D. Fla. 2009),
*aff'd*, 634 F.3d 1296 (11th Cir. 2011) (federal law preempts claim for alleged failure to train and

27  educate); *Mattingly v. Hubbard*, No. 07-cv-12014, 2008 WL 3895381 (Ky. Cir. Ct. July 30,
2008) (negligent failure to train was preempted because it "would . . . impose an additional

28  substantive requirement for a specific device").

---

preempted by federal law.  In particular, 21 U.S.C. § 337(a), which provides that any action to enforce the FDCA "shall be by and in the name of the United States," impliedly preempts any private action that attempts to enforce reporting duties created by the FDCA.  *See, e.g.*, *Buckman,* 531 U.S. at 353; *see also, e.g.*, *Houston*, 957 F. Supp. 2d at 1175 (implied preemption "'leaves no doubt that it is the Federal Government rather than private litigants who are authorized to file suit for noncompliance with the medical device provisions'") (quoting *Buckman*, 531 U.S. at 349 n.4).

Where, as here, it is indisputable that FDA has not withdrawn Essure's PMA and that it therefore remains in full force and effect,[10] courts have rejected the same "adulteration" and "invalidation" allegations that Plaintiff now asserts, as impliedly preempted by federal law.  *See, e.g., Perez*, 711 F.3d at 1120 (affirming dismissal of state law claim as impliedly preempted because "whether the [devices] were modified so that they were 'adulterated' . . . rest[s] within the enforcement authority of the FDA, not this Court") (internal quotations omitted); *Gile*, 22 F.3d at 544 (Plaintiff's "argument that her claims are not preempted because the [product] was 'adulterated' . . . must fail. . . .  Here, the FDA made no findings of adulteration and the records does not contain any facts to support such a claim.  Moreover, violations of the FDCA do not create private rights of action.  Thus, only the government has a right to take action with respect to adulterated products."); *Cornwell*, 2010 WL 4641112, at *4 ("To the extent Plaintiff's parallel claim is based on a theory the medical device implanted in Plaintiff was 'adulterated' such claim must also be dismissed as there is no private right of action for the enforcement of federal regulations relating to medical device provisions") (citing *Buckman*, 531 U.S. 3341, n.4).[11]

Similarly, courts have rejected claims premised on the same "failure to report" allegations that Plaintiff pleads here.  *See, e.g., Buckman*, 531 U.S. at 353 (claims that defendant

---

[10]  *See, e.g.* RJN, Ex. H (Essure "Regulatory History").

[11]  *See also Parker*, 584 F. Supp. 2d at 1301 ("Plaintiff . . . cannot escape preemption by reference to provisions of the FDCA that govern the sale of adulterated and misbranded devices because there is no private right of action under the FDCA."); *Talbott v. C.R. Bard, Inc.*, 865 F. Supp. 37, 50 (D. Mass. 1994) ("To recognize an exception to the usual scope of federal preemption concerning Class III devices for products purported to be adulterated would, in effect, be to create a private right of action under the MDA.").

committed fraud on the FDA were impliedly preempted); *In re Medtronic*, 623 F.3d at 1205-06 (affirming dismissal of claims that defendant "failed to provide the FDA with sufficient information and did not timely file adverse event reports," because "these claims are simply an attempt by private parties to enforce the MDA, claims foreclosed by § 337(a) as construed in *Buckman*").[12]

### III.   THE APPLICABLE STATUTE OF LIMITATIONS BARS PLAINTIFF'S CLAIMS.

Because California choice-of-law rules apply to this diversity case, and California has a two-year statute of limitations for personal injury actions, Plaintiff's state law claims are time barred, as they accrued when her first Essure placement attempt occurred in July 2012, or at the latest by the time she "started experiencing severe bleeding, and constant, daily pain" following her second attempted placement in September 2012.  FAC ¶ 74.

#### A.   California's Statute Of Limitations Applies To Plaintiff's Claims.

Because Plaintiff, a South Carolina resident, filed this diversity suit in a California district court, California's choice-of-law rules are applied to determine which state's statute of limitations control Plaintiff's claims.  *First Intercontinental Bank v. Ahn*, 798 F.3d 1149, 1153 (9th Cir. 2015) ("In diversity jurisdiction cases . . . we apply the substantive law of the forum in which the court is located, including the forum's choice of law rules.") (quotations omitted).

California applies a "governmental interest approach to conflict of law issues."  *Deutsch v. Turner Corp.*, 324 F.3d 692, 716 (9th Cir. 2003) (quotations omitted), and "[a] separate

---

[12]  Unlike *Stengel*, 704 F.3d 1224 (9th Cir. 2013), in which the court found that a claim premised on defendant's failure to report adverse events was not preempted, Plaintiff here does not even try to allege that if Bayer had reported allegedly withheld adverse events, the information would have reached Plaintiff's doctor or affected Plaintiff herself.  Nor does Plaintiff allege that the mere "8 perforations" that were allegedly withheld (FAC ¶¶ 18, 46, 70, 82, 100, 106) would have altered Essure's labeling, which already repeatedly warns of the risk of perforation or puncture.  *See* RJN, Ex. G (Essure Patient Information Booklet) at 7 ("an Essure insert may puncture the fallopian tube"); *see also* RJN, Ex. I ("Essure Benefits and Risks") (risks include "[p]erforation of the uterus or fallopian tubes").  Moreover, Plaintiff concedes that allegedly concealed "adverse event" pregnancies actually *were* reported to FDA by 2006, six years before placement of her Essure device.  *See* Compl. ¶ 92(e).  Under similar circumstances, courts have dismissed failure to warn claims as preempted.  *E.g., Beavers-Gabriel*, 15 F. Supp. 3d at 1040 (failure to warn claim was preempted because "Plaintiffs provide no facts or arguments tying the failure to submit reports of adverse events to the FDA to a failure to warn Plaintiffs and Plaintiff's physicians"); *Martin*, 32 F. Supp. 3d at 1043 (similar).

choice-of-law inquiry must be made with respect to each issue in a case." *S.A. Empresa De Viacao Aerea Rio Gradense v. Boeing Co.*, 641 F.2d 746, 749 (9th Cir. 1981).[13] "Where the conflict concerns a statute of limitations, the governmental interest approach generally leads California courts to apply California law, and especially so where California's statute would bar a claim." *Deutsch*, 324 F.3d at 716; *Theranos, Inc. v. Fuisz Pharma LLC*, 876 F. Supp. 2d 1123, 1131 (N.D. Cal. 2012) ("Federal courts sitting in California and applying a *Deutsch* analysis consistently conclude that California's statute of limitations applies when faced with a choice-of-law concerns, absent a rare and exception or extraordinary interest by a foreign state to keep alive the claims.").

Here too, the Court should find that California's statute of limitations applies and bars Plaintiff's claims.  First, the laws of the two jurisdictions are different.  California has a two-year statute of limitations for personal injury claims that applies to all of Plaintiff's claims.  Cal. Civ. Proc. § 335.1 ("An action for assault, battery, or injury to, or for the death of, an individual caused by the wrongful act or neglect of another" shall be brought "[w]ithin two years").[14] *See also, e.g., Chione v. Medtronic, Inc.* No. 14-cv-01043, 2015 WL 2151889, at *4 (S.D. Cal. May 7, 2015) (dismissing claims for negligence, strict liability, breach of express and implied

---

[13]  The governmental interest approach is applied as follows:

> First, the court determines whether the relevant law of each of the potentially affected jurisdictions with regard to the particular issue in question is the same or different.   Second, if there is a difference, the court examines each jurisdiction's interest in the application of its own law under the circumstances of the particular case to determine whether a true conflict exists.   Third, if the court finds that there is a true conflict, it carefully evaluates and compares the nature and strength of the interest of each jurisdiction in the application of its own law to determine which state's interests would be more impaired if its policy were subordinated to the policy of the other state and then ultimately applies the law of the state whose interest would be more impaired if its law were not applied.

*McCann v. Foster Wheeler LLC*, 225 P.3d 516, 527 (Cal. 2010) (quotations omitted).

[14]  In each of Plaintiff's ten (10) causes of action, she alleges:  "As a direct and proximate result of one or more of these wrongful acts or omissions of Defendants, Plaintiff suffered profound injuries, required medical treatment, and incurred and continues to incur medical and hospital expenses."  Compl. ¶¶ 117, 127, 131, 144, 152, 157, 161, 171, 179, 185.

warranty, and fraud as time-barred under § 335.1 because "[u]nder California law, personal injury claims based on defective products are based on a two-year limitations period regardless of the particular legal theory invoked").[15]  In contrast, a three-year statute of limitations applies to all of Plaintiff's claims under South Carolina law.  *See* S.C. Code Ann. § 15-3-530; *Kennedy v. Techtronic Ind. N. Am. Inc.*, No. 8:13-00871, 2014 WL 958035, at *3 (D.S.C. Mar. 10, 2014) (S.C. Code. Ann. § 15-3-503(5) applies to strict products liability, negligence, and breach of implied warranty claims).

Second, California has a strong interest in applying its own statute of limitations. "California's interest in applying its own law is strongest when its statute of limitations is shorter than that of the foreign state, because a state has a substantial interest in preventing the prosecution in its courts of claims it deems to be stale.  Hence, subject to rare exceptions, the forum will dismiss a claim that is barred by its statute of limitations."  *Deutsch*, 324 F.3d at 717 (quotations omitted); *see also*, *Ashland Chem. Co. v. Provence*, 129 Cal. App. 3d 790, 794 (Cal. Ct. App. 1982) ("Statutes of limitation are designed to protect the enacting state's residents and courts from the burdens associated with the prosecution of stale cases . . . .").  Indeed, "only an extraordinarily strong interest of a foreign state in keeping . . . claims alive could overcome the presumption that California will not hear claims that have been stale . . . under its own law."  *Deutsch*, 324 F.3d at 717.  Far from "an extraordinarily strong interest," South Carolina has no interest in allowing its citizens to use its laws to impose liability on foreign residents in a foreign forum based, at least in part, on alleged foreign conduct.  *See, e.g., Carlton v. Herz Corp.*, No. 12-cv-07178, 2013 WL 394894, at *4 (C.D. Cal. Jan. 28, 2013) (Florida had no interest in applying its longer statute of limitations, even though all relevant events occurred in Florida).

Accordingly, because California has a stronger interest in the application of its statute of limitations, Cal. Civ. Proc. § 335.1 should be applied.  Indeed, California's statute of limitations is routinely applied where, as here, the relevant cause of action allegedly arose in a foreign state

---

[15]  *See also, e.g., Erickson v. Boston Scientific Corp.*, 846 F. Supp. 2d 1085, 1094 (C.D. Cal. 2011) (applying § 335.1 to failure to warn, design defect, manufacturing defect, negligence, and fraud claims); *Bennett v. Suncloud*, 56 Cal. App. 4th 91, 96 (Cal. Ct. App. 1997) (same statute of limitations applies to negligence, breach of warranty, and products liability claims).

but the action was filed in California.  *See, e.g., Nelson v. Int'l Paint Co*., 716 F.2d 640, 645 (9th

Cir. 1983) (California statute of limitations applied where no defendants were located in foreign

state, because foreign state had no interest in applying its statute of limitations); *Ashland Chem.*

*Co.*, 129 Cal. App. 3d at 794 (California statute of limitations applied where conduct giving rise

to claim occurred in foreign state); *Carlton,* 2013 WL 394894, at *4; *Ashland Chem. Co.*, 129

Cal. App. 3d at 795.

## B.    California's Two-Year Statute Of Limitations Bars Plaintiff's State Law Claims.

Because Plaintiff discovered her injuries in 2012, more than two years before she filed

this suit, California's two-year statute of limitations bars all of her state law claims.  Cal. Code

Civ. P. § 335.1.  "Under California law, the limitations periods . . . runs from the moment a claim

accrues."  *Plumlee v. Pfizer, Inc.*, NO. 13-CV-00414, 2014 WL 695024, at *7 (N.D. Cal. Feb.

21, 2014) (internal quotation omitted).  A cause of action accrues at the time it is complete with

all of its elements—generally the date of injury.  *Norgart v. Upjohn Co*., 21 Cal. 4th 383, 397

(1999); *see also Pooshs v. Philip Morris USA, Inc.*, 51 Cal. 4th 788, 797 (2011) ("the infliction

of appreciable and actual harm, however uncertain in amount, will commence the statutory

period").

Plaintiff alleges that she was first injured in July 2012 after the first failed placement of

her Essure device.  FAC ¶¶ 71-72 (alleging injuries associated with attempted placement).  She

alleges further injury from her physician's placement of her device in September 2012, after

which she allegedly experienced "severe bleeding, and constant, daily pain."  *Id*. ¶¶ 73-74.

Plaintiff's physician allegedly informed her in December 2012 that a portion of her device was

"stretched or possibly broken," ultimately resulting in removal of that portion of the device and

her right fallopian tube in February 2013.  *Id*. ¶¶ 73-76.  Consequently, Plaintiff's claims accrued

as early as July 2012, the date of her first alleged injury, and by September 2012 at the latest.

*See, e.g.*, *Chione*, 2015 WL 2151889, at *4-5 (dismissing plaintiff's claims that he was injured

from the use of a medical device during surgery, because his claims accrued on the date of the

surgery and were time barred under Cal. Code Civ. Proc. § 335.1).  Even if the Court were to

1   allow her the date of her removal surgery in February 2013, Plaintiff's initial Complaint was

2   filed on September 1, 2015, more than two years afterwards, and is therefore time-barred.

3       While Plaintiff alleges that her FAC is timely because of "the discovery rule," and

4   because Bayer purportedly fraudulently concealed relevant facts related to "migrations and

5   perforations," FAC ¶ 80-81, neither of these tolling mechanisms saves Plaintiff's stale claims.  In

6   particular, "to rely on the discovery rule, a plaintiff whose complaint shows on its face that his

7   claim would be barred without the benefit of the discovery rule must specifically plead facts to

8   show . . . the inability to have made earlier discovery despite reasonable diligence."  *Chione*,

9   2015 WL 2151889, at *4 (internal quotation omitted).  The discovery rule only tolls a claim until

10  a plaintiff "discovers, or has reason to discover, the cause of action."  *Clemens v.*

11  *DaimlerChrysler Corp.*, 534 F.3d 1017, 1024 (9th Cir. 2008); *see also Fox v. Ethicon Endo-*

12  *Surgery, Inc.*, 35 Cal. 4th 797, 807-08 (2005) ("Rather than examining whether the plaintiffs

13  suspect facts supporting each specific legal element of a particular cause of action, we look to

14  whether the plaintiffs have reason to at least suspect that a type of wrongdoing has injured

15  them.").  Similarly, for the doctrine of fraudulent concealment to toll the statute of limitations, a

16  "plaintiff must show: (1) when the fraud was discovered; (2) the circumstances under which it

17  was discovered; and (3) the plaintiff was not at fault for failing to discover it or had no actual or

18  presumptive knowledge of facts sufficient to put him on inquiry."  *Clemens*, 534 F.3d at 1024.

19  And like the discovery rule, "[t]he doctrine of fraudulent concealment does not come into play,

20  whatever the lengths to which a defendant has gone to conceal the wrongs, if a plaintiff is on

21  notice of a potential claim."  *Rita M. v. Roman Catholic Archbishop,* 187 Cal. App. 3d 1453,

22  1460 (1986); *accord Cal. Sansome Co. v. U.S. Gypsum,* 55 F.3d 1402, 1409 n.12 (9th Cir. 1995).

23      Plaintiff not only suspected, but had *actual knowledge* in July 2012 and September 2012

24  that Essure allegedly caused her injuries, and in December 2012 that one of her Essure coils

25  allegedly "broke," requiring that it be removed from her body.  *See* FAC ¶¶ 71-76.  Because she

26  was on notice and/or had knowledge of her claimed injury and its alleged cause at that time, yet

27  waited more than two years to file suit, neither the discovery rule nor fraudulent concealment can

28  save her claims.  *See, e.g., Erickson v. Boston Scientific Corp.*, 846 F. Supp. 2d 1085, 1095 (C.D.

Cal. 2011) (statute of limitations began to run when "plaintiff suspected, or should have suspected, that Defendants' pacemaker was allegedly defective" because "it failed to operate properly and required replacement at physician's direction . . . less than three years after it was implanted"). *See also Platt Elec. Supply, Inc. v. EOFF Elec., Inc.*, 522 F.3d 1049, 1059 (9th Cir. 2008) (claim was not tolled because once plaintiff learned that the product was "defective and posed a safety hazard, it was on notice that" representations regarding the safety of the product were "factually false"); *In re Mirena IUD Prods. Liab. Litig.*, No. 7:14-cv-05229, 2015 WL 144214, at *7 (S.D.N.Y. Jan. 9, 2015) (dismissing claims for defective manufacturing, failure to warn, design defect, negligence, strict liability, breach of implied and express warranties, and negligent misrepresentation, arising from injuries allegedly sustained from use of a birth control device, as time-barred under the California two-year statute of limitations because plaintiffs were aware of their claims as of the date their medical devices were removed).

In an effort to save her stale claims, Plaintiff alleges for the first time in her FAC that when a portion of her device was removed in February 2013, she was told she would not have continuing symptoms. FAC ¶ 76. She acts as if what revives her claims is that she continued to experience the same "constant, daily pain and heavy bleeding" from the remaining portion of the device. FAC ¶ 77. While she allegedly "did not think that the remaining, unbroken [portion of the device] could be the source of the problems," *id.* ¶ 78, these allegations do nothing to toll or revive Plaintiff's already time-barred claims. Whether Plaintiff thought her problems would persist after February 2013 is irrelevant. According to her, she already knew that the first attempted placement was unsuccessful in July 2012; she already knew that she had pain after the second placement in September 2012; and she already knew that a portion of the device stretched or broke in December 2012. FAC ¶¶ 71-75. Where "a plaintiff is aware of both an injury and its wrongful cause but is uncertain as to how serious the resulting damages will be or whether additional injuries will later become manifest[,] . . . 'the infliction of appreciable and actual harm, however uncertain in amount, will commence the statutory period.'" *Pooshs*, 51 Cal. 4th at 797 (citing *Davies v. Krasna*, 14 Cal. 3d 502, 514 (1975)); *see also, e.g.*, *Crowley v. Peterson*, 206 F. Supp. 2d 1038, 1044 (C.D. Cal. 2002) (statute of limitations began to run when plaintiffs

experienced "several minutes of extreme fear" during an accident, because "*any* compensable harm is sufficient to trigger the running of the statute [of limitations]," such that plaintiff's claims for later, more "substantial injuries" arising from the same accident were time barred). Plaintiff does not allege that she suffered from any latent disease, or that she suffered separate and distinct injuries, but rather that her current injuries are the same as those she experienced in 2012.  FAC at ¶¶ 74 ("After the device was implanted, Plaintiff started experiencing severe bleeding, and constant, daily pain."), 77 ("even after the broken coil was removed, Plaintiff experienced the constant daily pain and heavy bleeding").  Accordingly, her claims remain time-barred.[16]

## IV. PLAINTIFF FAILS TO STATE A CLAIM PURSUANT TO FEDERAL PLEADING STANDARDS.

### A. Plaintiff Fails To Adequately Plead Causation In Support Of Her Claims.

As set forth above, Plaintiff fails to allege any causal link between any alleged violation of a PMA requirement pertaining to Essure (or any of Bayer's other alleged conduct, for that matter), and herself or her injuries.  *See supra*, § I.B.  Instead, each of her claims merely contains "labels and conclusions, and a formulaic recitation of the elements of a cause of action . . . ." *Twombly*, 550 U.S. at 570.  *See also* FAC ¶¶ 107-185 (alleging generically that "[a]s a direct and proximate result of one or more of these wrongful acts or omissions of the Defendants, Plaintiff suffered profound injuries").  Not only does this render Plaintiff's claims expressly preempted, *supra*, § I.B, but she also fails to state a claim pursuant to *Iqbal/Twombly* federal pleadings standards.  *See, e.g., Hawkins v. Medtronic, Inc.*, No. 1:13-cv-00499, 2014 WL 346622, at *8

---

[16] Plaintiff does not explain how internet research that revealed "many *other* women having" issues with Essure somehow alerted her to the fact that *she* had a claim, particularly given that she was on notice years earlier that she *personally* suffered injuries she alleges were caused by Essure.  *See* FAC ¶ 78 (emphasis added); *Plumlee*, 2013 WL 4275519, at *9 (dismissing complaint with prejudice where plaintiff failed to investigate her claim that defendant's drug was ineffective because she "thought [it] was only ineffective for her").  Nor does Plaintiff explain why she could not have discovered this same information on the internet years earlier.  FAC ¶ 78; *see also Plumlee*, 2013 WL 4275519, at *9 (dismissing claims because "Plaintiff has failed to adequately plead that a reasonable investigation could not have resulted in the discovery of her claims" at an earlier date); *Chione*, 2015 WL 2151889, at *4 ("Formal averments or general conclusions to the effect that the facts were not discovered until a stated date, and that plaintiff could not reasonably have made an earlier discovery, are useless.") (internal quotation omitted).

(E.D. Cal. Jan. 30, 2014) ("Plaintiff generally alleges that Defendants failed to report adverse events to the FDA.  He also generally alleges that these failures caused or contributed to his injuries.  What is not alleged is any factual content that would support the causal nexus. . . . Thus, claims based on Defendants' failure to report adverse event[s] to the FDA cannot stand because they are not adequately pled.") (citing *Twombly*, 550 U.S. at 555); *Nimtz*, 2011 WL 831182, at *4 ("the allegation that the pacemaker failed to be accompanied by or contain adequate instructions as to it's [sic] use and limitations and/or adequate warnings concerning the defective condition . . . is a legal conclusion that does not allege a plausible cause of action") (citing *Iqbal*, 123 S. Ct. at 1249-50); *Parker*, 584 F. Supp. 2d at 1301 ("The complaint does allege generally that the [device] was unreasonably dangerous and defective . . . , which proximately caused plaintiff's injuries.  However, such conclusory allegations standing alone are not sufficient to sustain plaintiff's burden of pleading under *Twombly*.").

### B.     Plaintiff Fails To State Her Fraud Claims With The Requisite Particularity.

Moreover, Plaintiff has not pled any of her claims sounding in fraud with the specificity required by Federal Rule 9(b).  Under this heightened pleading standard, plaintiff "must state with particularity the circumstances constituting fraud," Fed. R. Civ. P. 9(b), including each element of the fraud claim and the "who, what, when, where, and how of the misconduct charged."  *Kearns*, 567 F.3d at 1124, 1126-27.[17]

Here, while Plaintiff alleges that Bayer has made various "representations" and "warranties" in a commercial, brochure, booklet, PMA submissions, and SEC filings, *see* FAC ¶¶ 91-106, she never alleges when these statements were made; how, if at all, she encountered them; or what, if anything, she relied upon from what she saw.  Instead, Plaintiff conclusorily asserts that she "relied on express warranties of Defendant," *id*. ¶¶ 8, 12, 90, without any factual support or specificity.  More is required to meet Rule 9(b)'s particularity requirement, and

---

[17]  *See also, e.g., Neilson v. Union Bank of California, N.A.*, 290 F. Supp. 2d 1101, 1141 (C.D. Cal. 2003) ("It is well-established in the Ninth Circuit that both claims for fraud and negligent misrepresentation must meet Rule 9(b)'s particularity requirements."); *Marolda v. Symantec Corp.*, 672 F. Supp. 2d 992, 1002 (N.D. Cal. 2009) ("The Ninth Circuit has recently clarified that claims of nondisclosure and omission, as varieties of misrepresentations, are subject to the pleading standards of Rule 9(b)").

1   Plaintiff's fraud and misrepresentation claims, Counts VIII-X, should therefore be dismissed.

2   *See, e.g.*, *Kearns*, 567 F.3d at 1126 (dismissing claims pursuant to Rule 9(b) because plaintiff

3   failed to "specify when he was exposed to [defendant's representations] or which ones he found

4   material"); *Herrington v. Johnson & Johnson Consumer Cos., Inc.*, No. 09-cv-1597, 2010 WL

5   3448531, at *7 (N.D. Cal. Sept. 1, 2010) (dismissing fraud-based claims under Rule 9(b) where

6   plaintiffs "do not plead the circumstances in which they were exposed to these statements," and

7   "do not plead upon which of these representations they relied"); *In re Hydroxycut Mktg. & Sale*

8   *Practices Litig.*, No. 09-md-2087, 2011 WL 3844217, *3 (S.D. Cal. Aug. 29, 2011) ("Although

9   Plaintiff quotes the Hydroxycut website, product labels, inserts and other advertising in general .

10  . . Plaintiff fails to specify that he was exposed to these statements, when he was exposed to

11  them, and which material he relied upon in making his decision to purchase and ingest the"

12  products at issue).[18]

13  **V.     PLAINTIFF FAILS TO STATE A CLAIM FOR DESIGN DEFECT UNDER**

14  **CALIFORNIA OR SOUTH CAROLINA STATE LAW.**

15          Whether California or South Carolina law applies to Plaintiff's claims for relief, her strict

16  liability design defect claims fail as a matter of law.  Under California law, "the entire category

17  of medical implants available only by resort to the services of a physician are immune from

18  design defect strict liability."  *Artiglio v. Superior Court*, 22 Cal. App. 4th 1388, 1397 (1994).

19  Because implanted medical devices, like prescription drugs, are "products which, in the present

20  state of human knowledge, are quite incapable of being made safe for their intended and ordinary

21  use," they are "not to be held to strict liability for unfortunate consequences attending their use,

22  merely because [the defendant] has undertaken to supply the public with an apparently useful

23  and desirable product, attended with a known but apparently reasonable risk."  *Hufft v. Horowitz*,

24  4 Cal. App. 4th 8, 13 (1992) (applying section 402A of the Restatement Second of Torts,

25  ───────────────

26  [18]  *See also, e.g., Damaheh v. 7-Eleven, Inc.*, No. 5:12-cv-1739, 2012 WL 4009503, at *5 (N.D.
    Cal. Sept. 12, 2012) (plaintiff failed to adequately allege reliance when the allegation "does not
    show any action or non-action by plaintiff . . . in response to the alleged misrepresentation");

27  *Senah, Inc. v. Xi'an Forstar S&T Co.*, No. 13-cv-4254, 2014 WL 6065895, at *2 (N.D. Cal. Nov.
    12, 2014) (plaintiff failed to adequately plead justifiable reliance under Rule 9(b) when plaintiffs

28  pled no representations by defendant that pre-dated her injury-causing conduct).

comment k to implanted medical devices).  As California courts have noted, "[p]ublic interest is served, rather than thwarted, by relieving the manufacturer of strict liability for injuries resulting from implanted medical devices that have been properly fabricated and marketed."  *Id.* at 19. Similarly, under South Carolina law, prescription drugs and medical devices "are deemed 'unavoidably unsafe,' but are not defective or unreasonably dangerous if they are marketed with proper directions for use or include adequate warnings of potential side effects."  *Brooks v. Medtronic, Inc.*, 750 F.2d 1227, 1230-31 (4th Cir. 1984) (following comment k in assessing claims under South Carolina law).

Here, Essure is indisputably an "implanted medical device."  Accordingly, Plaintiff's "Design Defect" claim (Count II) and "Strict Liability" claim (Count V), both premised on the Essure design, should be dismissed.

**CONCLUSION**

The Court should dismiss Plaintiff's First Amended Complaint with prejudice pursuant to Rules 8, 9(b), and 12(b)(6) because (i) each of her state law claims is expressly preempted by federal law; (ii) to the extent her claims are based on allegations that Essure is "adulterated," that its PMA is "invalid," or that Bayer failed to fulfill its reporting duty to the FDA, federal law impliedly preempts her claims; (iii) California's two-year statute of limitations bars Plaintiff's claims; (iv) Plaintiff fails to state a claim pursuant to federal pleading standards; and (v) strict liability design defect claims are not cognizable against implantable medical devices like Essure under California or South Carolina law.

//

//

//

//

//

//

//

//

1    Dated: November 9, 2015                    SIDLEY AUSTIN LLP

2

3                                         By:   */s/ Alycia A. Degen*
                                               Alycia A. Degen
4
                                               Alycia A. Degen
5                                              SIDLEY AUSTIN LLP
                                               555 West Fifth Street
6                                              Los Angeles, CA 90013
                                               (213) 896-6682
7                                              (213) 896-6600 (fax)
                                               adegen@sidley.com
8
                                               Maja Eaton (*pro hac vice* to be filed)
9                                              Elizabeth Curtin (*pro hac vice* to be filed)
                                               SIDLEY AUSTIN LLP
10                                             One South Dearborn
                                               Chicago, IL 60603
11                                             (312) 853-7123
                                               (312) 853-7036 (fax)
12                                             meaton@sidley.com
                                               ecurtin@sidley.com
13
                                               *Attorneys for Defendants Bayer HealthCare*
14                                             *LLC; Bayer Essure Inc.; Bayer HealthCare*
                                               *Pharmaceuticals, Inc.*
15

16

17

18

19

20

21

22

23

24

25

26

27

28