Martin Schmidt, Esq. (SBN 171673)
mschmidt@nationalinjuryhelp.com
SCHMIDT NATIONAL LAW GROUP
4241 Jutland Dr., Suite 200
San Diego, CA 92217
Telephone: (800) 214-1010

Attorney for Plaintiff
TANYA DE LA PAZ

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| TANYA DE LA PAZ, an individual,<br><br>　　　　　Plaintiff,<br><br>　　vs.<br><br>BAYER HEALTHCARE LLC, a Delaware corporation; BAYER ESSURE, INC., a Delaware Corporation; BAYER HEALTHCARE PHARMACEUTICALS, INC., a Delaware corporation; and DOES 1 through 10, inclusive.<br><br>　　　　　Defendants. | Case No. 3:15-cv-03995-WHA<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS' RENEWED MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Honorable William H. Alsup<br>Hearing Date: January 21, 2016<br>Time: 8:00 a.m.<br><br>Complaint Filed: Sept.1, 2015<br>Trial: Not Set<br><br>Place:  Courtroom 8, 19th Floor |

///

///

///

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ...................................................................................... ii

**MEMORANDUM OF POINTS AND AUTHORITIES** .................................... 1

**I.   INTRODUCTION.** ........................................................................................ 1

**II.  FACTS** ........................................................................................................... 1

**III. LEGAL ANALYSIS** ..................................................................................... 2

    **A.  Standard under Federal Rule of Civil Procedure 12(b)(6)** ................... 2

    **B.  Plaintiff's claims are not expressly preempted.** ..................................... 2

        *1.  Lohr* ................................................................................................ 4

        *2.  Reigel* ............................................................................................ 4

        *3.  Stengel* .......................................................................................... 6

            a. Negligent and strict liability products liability claims ............ 7

                *i.   Design Defect* ................................................................. 7

                *ii.  Manufacturing Defect* .................................................... 8

                *iii. Failure to Warn* .............................................................. 9

                *iv.  Negligent training/entrustment* .................................... 11

             b. Breach of Warranties and Misrepresentations ........................ 12

    **C.  Plaintiff's claims are not impliedly preempted.** ................................... 15

    **D.  Plaintiff pleads fraud and concealment with sufficient particularity.** ... 15

    **E.  The statute of limitations began to run in late
       2014 when Plaintiff learned of the link between a
       properly-placed Essure device and medical problems.** ....................... 17

        *1.  Delayed Discovery* ...................................................................... 17

        *2.  Fraudulent Concealment* ............................................................. 21

    **F.  To the extent the Court finds any of Plaintiff's claims lacking,
       Plaintiff should be granted leave to amend her complaint.** ................. 21

**IV.  CONCLUSION** ............................................................................................ 22

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Anderson v. Owens- Corning Fiberglas Corp.*
 53 Cal.3d 987, 995 (1991) ........................................................................ 7, 10

*Asghari v. Volkswagen Group of America, Inc.*
 42 F.Supp.3d 1306 (C.D. Cal. 2013) ............................................................ 14

*Ashcroft v. Iqbal*
 556 U.S. 662 (2009) ...................................................................................... 2

*Bancorp Leasing & Fin. Corp. v. Agusta Aviation Corp.*
 813 F.2d 272 (9th Cir.1987) ....................................................................... 17

*Bausch v. Stryker Corp.*
 630 F.3d 546 (7th Cir. 2010) ..................................................................... 9, 21

*Bell Atlantic Corp. v. Twombly*
 550 U.S. 544 (2007) ...................................................................................... 2

*Bonanno v. Thomas*
 309 F.2d 320 (9th Cir.1962) ....................................................................... 22

*Brannan v. United Student Aid Funds, Inc.*
 94 F.3d 1260 (9th Cir. 1996) ...................................................................... 22

*Buckman Co. v. Plaintiffs' Legal Comm.*
 531 U.S. 341 (2001) ...................................................................................... 15

*Clark v. Baxter Healthcare Corp.*
 83 Cal. App. 4th 1048 (2008) ........................................................... 18, 19, 20

*Coleman v. Medtronic, Inc.*
 223 Cal.App.4th 413 (2014) ........................................................................ 10

*E–Fab, Inc. v. Accountants, Inc. Services*
 153 Cal.App.4th 1308 (2007) ...................................................................... 18

*Eidson v. Medtronic, Inc.*
 981 F.Supp.2d 868 (N.D. Cal. 2013) ..................................................... 10, 12

*Fox v. Ethicon Endo–Surgery, Inc.*
 35 Cal.4th 797 (2005) ............................................................................ 17, 18

///

*Gagne v. Bertran*
43 Cal.2d 481 (1954) ................................................................................ 16

*Grisham v. Philip Morris, Inc.*
670 F.Supp.2d 1014 (C.D.Cal.2009) ........................................................ 17

*Gutierrez v. Mofid*
39 Cal.3d 892 (1985) ................................................................................ 17

*In re Medtronic, Inc. Sprint Fidelis Leads Prods. Liab. Litig.*
592 F.Supp.2d 1147 (D.Minn. 2009) .......................................................... 6

*Jiminez v. Sears, Roebuck & Co.*
4 Cal.3d 379 (1971) .................................................................................... 7

*Jolly v. Eli Lilly & Co.*
44 Cal.3d 1103 (1988) ........................................................................ 17, 18

*Kahle v. Gonzales*
474 F.3d 665 (9th Cir. 2007) ..................................................................... 2

*Kashani-Matts v. Medtronic, Inc.*
2013 WL 6147032 (C.D. Cal., Nov. 22, 2013, SACV 13-01161-CJC) ......... 7, 12, 13

*Kearns v. Ford Motor Co.*
567 F.3d 1120 (9th Cir.2009) .................................................................... 16

*Lazar v. Superior Court*
12 Cal.4th 631 (1996) ............................................................................... 16

*McClellan v. I-Flow Corp.*
776 F.3d 1035 (9th Cir. 2015) .................................................................... 6

*Medtronic, Inc. v. Lohr*
518 U.S. 470 (1996) ................................................................................ 4, 5

*Milwaukee Electric Tool Corp. v. Superior Court*
15 Cal.App.4th 547 (1993) .......................................................................... 7

*Mitchell v. Collagen Corp.*
126 F.3d 902, 915 (7th Cir. 1997) ............................................................. 13

*Nelson v. Indevus Pharmaceuticals, Inc.*
142 Cal.App.4th 1202 (2006) ........................................................ 19, 20, 21

*Norgart v. Upjohn Co.*
21 Cal.4th 383 (1999) ............................................................................... 17

PLAINTIFF'S OPPOSITION TO DEFENDANTS' RENEWED MOTION TO DISMISS;
MEMORANDUM OF POINTS AND AUTHORITIES

*Ovando v. County of Los Angeles*
159 Cal.App.4th 42 (2008) ................................................................. 18

*Prudhel v. Endologix, Inc.*
2009 WL 2045559 (E.D. Cal., July 9, 2009, CIV S-09-0661LKK/KJM) ................................. 13

*Purcel v. Advanced Bionics Corp.*
2010 WL 2679988 (N.D. Tex., June 30, 2010, 3:07-CV-1777-M) ........................................... 13

*Rattay v. Medtronic Inc.*
482 F. Supp. 2d 746 (N.D.W.V. 2007) ..................................................... 13

*Regents of University of California v. Superior Court*
20 Cal.4th 509 (1999) ........................................................................ 21

*Riegel v. Medtronic, Inc.*
552 U.S. 312, 128 S.Ct. 999, 169 L.Ed.2d 892 (2008) .......................................... passim

*Riley v. Cordis Corp.*
625 F.Supp.2d 769, 777 (D. Minn. 2009) ...................................................... 6

*Sagehorn v. Engle*
141 Cal.App.4th 452 (2006) ................................................................. 21

*Scovil v. Medtronic*
995 F.Supp.2d 1082, 1095–96, 2014 WL 502923 (D.Ariz. Feb. 7, 2014) ................................. 12

*Seedman v. Cochlear Americas*
15–cv–366, 2015 WL 4768239 (C.D.Cal. August 10, 2015) ........................................ 8

*Soliman v. Philip Morris Inc.*
311 F.3d 966 (9th Cir.2002) ................................................................. 17

*Stengel v. Medtronic Inc.*
704 F.3d 1224 (2013) ................................................................. 6, 9, 10, 15

*Swartz v. KPMG LLP*
476 F.3d 756 (9th Cir.2007) ................................................................. 2

*U.S. v. McGee*
993 F.2d 184 (9th Cir. 1993) ............................................................... 22

*Unjian v. Berman*
208 Cal.App.3d 881 (1989) ............................................................. 20, 21

*Ward v. Westinghouse Canada, Inc.*
32 F.3d 1405 (9th Cir.1994) ................................................................. 18

PLAINTIFF'S OPPOSITION TO DEFENDANTS' RENEWED MOTION TO DISMISS;
MEMORANDUM OF POINTS AND AUTHORITIES

## Statutes

21 C.F.R. § 803.50................................................................3, 6, 10
21 C.F.R. § 806.10.........................................................................6
21 C.F.R. § 808.1...............................................................8, 11, 13
21 C.F.R. § 814.80........................................................................11
21 C.F.R. § 820.70.........................................................................8
21 U.S.C. § 337............................................................................15
21 U.S.C. § 351.............................................................................8
21 U.S.C. § 360c........................................................................2, 3
21 U.S.C. § 360e.....................................................................2, 3, 7
21 U.S.C. § 360k.................................................................passim
Cal. Code Civ. Proc. § 335.1.......................................................17
Fed. R. Civ. Proc. 8.....................................................................21
Fed. R. Civ. Proc. 9.....................................................................16
Fed. R. Civ. Proc. 12(b)(6) ...........................................................2

PLAINTIFF'S OPPOSITION TO DEFENDANTS' RENEWED MOTION TO DISMISS;
MEMORANDUM OF POINTS AND AUTHORITIES

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.     INTRODUCTION

Federal regulation of Class III devices, such as the Essure contraceptive medical device at issue here, does not extinguish all concurrent state law claims. Indeed, the Supreme Court has long held that the relevant statute "simply was not intended to pre-empt most, let alone all, general common-law duties enforced by damages actions."[1] Plaintiff's claims, alleging that Bayer Defendants committed negligent acts, violated California's strict products liability law, made misrepresentations and concealments, and breach implied and express warranties, are not preempted because, through these acts or omissions, Defendants violated *both* federal regulations and *parallel* state laws. Further, because Plaintiff does not allege fraud on the FDA, her claims are not impliedly preempted, either.

Plaintiff's claims are timely because Defendants' fraudulent concealment of the risks and complications of the Essure device, and their adulteration thereof, delayed Plaintiff's discovery of the cause of her injuries, thereby tolling the statute of limitations. Further, she has sufficiently alleged her fraud claims with particularity. Finally, Plaintiff has shown how she can easily amend to cure any alleged defects in the complaint, and respectfully requests leave to do so, should the Court find any merit to Defendants' arguments.

### II.     FACTS

This case arises from the Bayer Defendants' misrepresentations, warranties, and distribution of a faulty, adulterated birth control device. Essure is a permanent form of female birth control that, in theory, works by causing bilateral blockage of the fallopian tubes by the insertion of coils that anchor and elicit tissue growth. (First Amended Complaint ["FAC"] ¶ 19.)

After Plaintiff's doctor implanted the Essure device into her fallopian tubes, Plaintiff started suffering from severe bleeding and pain, and her doctor discovered the coil inserted in Plaintiff's right tube was broken. (FAC ¶ 75.) Plaintiff underwent surgery to remove the pieces of the broken device and her right fallopian tube, and her doctor assured her that she would have no more symptoms caused by the Essure device. (FAC ¶ 76.) However, Plaintiff's problems with

---

[1] *Medtronic, Inc. v. Lohr,* 518 U.S. 470, 491 (1996).

bleeding and pain continued. (FAC ¶ 77.) Because her doctor had confirmed that the left coil was properly placed and not broken, Plaintiff did not suspect that the Essure device was the source of her problems. (FAC ¶ 78.) Not until late 2014 did Plaintiff learn, through internet research, about the many other women who were having similar issues caused by the Essure device. (FAC ¶ 78.) Consequently, in September 2015, Plaintiff had the remaining insert removed. (FAC ¶ 80.)

As a Class III medical device, the Essure System is closely monitored by the FDA prior to and during its introduction into interstate commerce. Bayer Defendants, however, violated several FDA regulations, causing the Essure System to be manufactured with numerous inherent defects. (FAC ¶ 91, passim.) For example, the FAC alleges that Defendants:

- Failed to comply with the FDA's Conditional Premarket Approval (FAC ¶ 9);
- Failed to report adverse events to the FDA (FAC ¶¶ 14, 16, 44, 68, 108, 142);
- Failed to sufficiently or adequately supplement its PMA (FAC ¶ 48);
- Used non-conforming materials in the manufacture of the Essure device (FAC ¶¶ 16, 68, 105);
- Failed to use pre-sterile and post-sterile cages (FAC ¶¶ 9, 68, 105);
- Manufactured Essure devices at an unlicensed facility (FAC ¶¶ 16, 68); and
- Manufactured Essure without a license to do so (FAC ¶¶ 16, 68, 105).

Despite its knowledge of the numerous problems with the device, Defendants made warranties and misrepresentations about its safety and effectiveness, which induced Plaintiff to have the device implanted. (FAC ¶¶ 12, 91, 92, 96). Notwithstanding the seriousness of these violations, and despite the risks they carried with them, Bayer Defendants did not notify Plaintiff of the fact that she was implanted with an adulterated component. Further, Defendants entrusted third party physicians with highly specialized equipment with which to implant the device without adequate training. (FAC ¶¶ 51-69.) As a result of Defendants' unlawful conduct, Plaintiff suffered injury to her body and was forced to expend a substantial amount of monies to remedy her injuries. (FAC ¶ 144.) She now brings this suit to recover for personal and economic losses sustained due to the Bayer Defendants' violation of federal regulations.

///

III.   **LEGAL ANALYSIS**

**A.   Standard under Federal Rule of Civil Procedure 12(b)(6)**

To survive dismissal for failure to state a claim pursuant to Rule 12(b)(6), a complaint must factual allegations sufficient to "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, (2007). The plaintiff must plead affirmative factual content that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662 (2009). "In ruling on a 12(b)(6) motion, a court may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice." *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir.2007). In considering a motion to dismiss, this court accepts all of the allegations in the complaint as true and construes them in the light most favorable to the plaintiff. *Kahle v. Gonzales,* 474 F.3d 665, 667 (9th Cir. 2007).

**B.   Plaintiff's claims are not expressly preempted.**

**1.   Background on Express Preemption**

Defendants' Essure System is treated as a "Class III Medical Device" under the federal Food, Drug, and Cosmetic Act ("FDCA"). Class III medical devices include those that "present[ ] a potential unreasonable risk of illness or injury." 21 U.S.C. § 360c(a)(1)(c). Under the federal act, the Food and Drug Administration (FDA) subjects new Class III medical devices to a rigorous process of federal review for safety and effectiveness called "premarket approval." See 21 U.S.C. § 360e; *Riegel v. Medtronic, Inc.*, 552 U.S. 312, 317–20 (2008) (describing process and requirements). Through the premarket approval process (PMA), device manufacturers must meet many requirements both before and after the FDA grants premarket approval. *Riegel*, 552 U.S. at 318–19. The agency must "weigh[ ] any probable benefit to health from the use of the device against any probable risk of injury or illness from such use." § 360c(a)(2)(C). Further, the FDA reviews the device's proposed labeling to determine that the proposed labeling is neither false nor misleading. § 360e(d)(1)(A). Through this process, the FDA decides whether to grant or deny premarket approval to a given device. § 360e(d).

After premarket approval, applicants must report "adverse events," in which the device may have caused or contributed to death or serious injury, or malfunctioned in a manner that would likely cause or contribute to death or serious injury if it recurred, to the FDA. 21 C.F.R. § 803.50(a). The manufacturer cannot make any changes to the design, manufacturing, or labeling of approved devices without first obtaining additional approval from the FDA. § 360e(d)(6); *Riegel*, 552 U.S. at 319.

The Medical Device Amendments ("MDA") of 1976 to the FDCA include an express, but limited, preemption provision for product liability claims against manufacturers of Class III medical devices:

> [N]o State or political subdivision of a State may establish or continue in effect with respect to a device intended for human use any requirement—(1) which is different from, or in addition to, any requirement applicable under this chapter to the device, and (2) which relates to the safety or effectiveness of the device or to any other matter included in a requirement applicable to the device under this chapter.

21 U.S.C. § 360k(a).

Two Supreme Court cases address the limited scope of this preemption provision. Neither case held that state lawsuits premised on violations of federal law are preempted under section 360k(a). In fact, the Court's opinions in these cases expressly left the door open for state law claims based on violations of federal law. Further, the Ninth Circuit has definitively held, based on these Supreme Court precedents, that claims that a defendant violated federal regulations through conduct that also breaches a duty under state law are not expressly preempted. These key cases are addressed in turn below.

    a. *Lohr*

First, in 1996, the Supreme Court held that lawsuits brought under state law against medical device manufacturers who submit "premarket notification" to the FDA are not preempted by 21 U.S.C. § 360k(a) when liability is premised on allegations that the manufacturer had violated federal regulations. *Medtronic, Inc. v. Lohr,* 518 U.S. 470, 481, 494–95 (1996). In *Lohr*, the Supreme Court explained that the federal preemption provision allows claims under a state's common law based on the defendant's violation of federal law because:

1  "[t]he presence of a damages remedy does not amount to the additional or different 'requirement'
2  that is necessary under the statute; rather, it merely provides another reason for manufacturers to
3  comply with identical existing 'requirements' under federal law." 518 U.S. at 495.

        b.  *Riegel*

5          In 2008, the Supreme Court again held that lawsuits brought under state law against
6  medical device manufacturers who obtain the full federal "premarket approval" are only
7  preempted by section 360k(a) when liability is premised on violations of state law requirements
8  that are *in addition to or different from* federal requirements regulating the devices. *Riegel*, 552
9  U.S. at 330. However, nothing in *Riegel* calls into question the ability of a patient to sue a Class
10 III device manufacturer under state law for violations of federal law—as Plaintiff does in this
11 case. To the contrary, the *Riegel* court went out of its way to explain that such claims are not
12 preempted.

13         The plaintiffs in *Riegel* alleged that the defendant's medical device was designed,
14 labeled, and manufactured in breach of duties imposed by state common law, and that the defects
15 caused the plaintiffs to suffer severe and permanent injury. *Riegel*, 552 U.S. at 320. The district
16 court had held that section 360k preempted the plaintiffs' claims of strict liability, breach of
17 implied warranty, and negligence in the design, testing, inspection, distribution, labeling,
18 marketing and sale of the device. *Id*. at 320–21. The district court also held that section 360k
19 preempted the Riegels' negligent manufacturing claim, but only to the extent that the claim was
20 not premised on the theory that Medtronic had violated federal law. *Id*. at 321. But the district
21 court had allowed the Riegels to go forward on claims that Medtronic was negligent in
22 manufacturing by failing to comply with federal standards and had breached an express
23 warranty, because those claims were not preempted by section 360k.

24         On review, the Supreme Court held that the premarket approval process imposed federal
25 "requirements" that triggered the preemption clause of section 360k. *Id*. at 322–23. The Court
26 further held that the tort duties implicit in a finding of liability under the common law claims
27 brought by the Riegels would also constitute "requirements" under section 360k. *Id*. at 323–25.
28 Ultimately, the Court concluded that, to the extent the state tort law underlying the Riegels'

claims would require a manufacturer's device to be safer (but perhaps less effective) than the model device approved by the FDA, those requirements would "disrupt[ ] the federal scheme no less than state regulatory law to the same effect." *Id*. at 325. Thus, the Court found that the state requirements implicit in the Riegels' common law claims were different from or in addition to the federal requirements and were preempted under section 360k.

Significantly, however, the *Riegel* court took care to limit its holding to claims that the device at issue "violated state tort law notwithstanding compliance with the relevant federal requirements." 552 U.S. at 330. The Court gave lower courts clear instructions to allow claims to proceed when they are based on claimed violations of federal law: "§ 360k does not prevent a State from providing a damages remedy for claims premised on a violation of FDA regulations; the state duties in such a case 'parallel,' rather than add to, federal requirements." *Id*. (quoting *Lohr*, 518 U.S. at 495). The Supreme Court thus has made clear, quite logically, that section 360k protects a medical device manufacturer from liability to the extent that it has complied with federal law, but it does not extend protection from liability where the claim is based on a violation of federal law. In other words, where state law is parallel to federal law, section 360k does not preempt the claim.

c. *Stengel*

Relying on these Supreme Court precedents, in *Stengel v. Medtronic Inc.* 704 F.3d 1224 (2013), the Ninth Circuit held that claims against a medical device manufacturer (similar to those pursued here) were not preempted. In *Stengel*, plaintiffs sued under state law claiming that the defendant's product caused a granuloma and rendered one plaintiff permanently paraplegic. The label did not warn of granulomas because that adverse event was not known at the time the product was cleared, but only became known after the product was on the market. *Id*. at 1227. According to the Stengels, the FDA discovered the risks, and discovered that Medtronic already knew about them, when it inspected a Medtronic facility in late 2006 and early 2007. *Id*. The FDA sent a warning letter to Medtronic in July 2007, stating that Medtronic had "misbranded" its Class III device by concealing known risks, in violation of 21 C.F.R. §§803.50(a)(1) and

806.10(a)(1). *Id*. In response to the FDA warning letter, in early 2008, Medtronic sent a medical device correction letter to doctors and shortly afterward recalled the device. *Id*.

The district court granted Medtronic's motion to dismiss on preemption grounds. *Id*. After *en banc* review, the Ninth Circuit reversed finding that the FDCA did not preempt a state-law claim in which the state-law duty of care "parallels" a federal law duty imposed by the MDA. *Id*. at 1233. Citing *Riegel*, the Ninth Circuit held that state requirements are preempted under the MDA only to the extent that they are different from, or in addition to, federal requirements. In sum, in order to state a claim that avoids both express and implied preemption, a plaintiff must be suing for conduct that violates the FDCA (or else his claim is expressly preempted by § 360k(a)), but the plaintiff must not be suing *because* the conduct violates the FDCA. *Id*. at 1233. Stated differently, to survive both express and implied preemption, a state law cause of action must be premised on conduct that both (1) violates the FDCA and (2) would give rise to a recovery under state law even in the absence of the FDCA. *Id*. A presumption against preemption applies in cases that do not involve implied preemption. *McClellan v. I-Flow Corp.*, 776 F.3d 1035, 1040 (9th Cir. 2015).

**2.  Plaintiff's claims are based upon "parallel" state law violations.**

In order for Plaintiff's claims to be preempted, Defendants must establish two things: 1) "the Federal Government has established requirements applicable to [the device at issue]"; and 2) Plaintiff's claims would impose requirements "different from, or in addition to" the federal requirements. *Riegel,* 522 U.S. at 321-22.

Plaintiff agrees that the threshold prong—whether the FDA has established requirements for the device in question—is met here. The Essure device underwent the PMA process because it is classified as a Class III Medical Device. In addition, the Essure device is subject to continuing regulation by the FDA in areas such as its manufacturing process. *Id*. at 322.

The second prong of *Riegel*, however, is not met here. Plaintiff's claims are not based on any requirement of state law that is "different from, or in addition to" federal requirements and

relate to safety and effectiveness. Each is based on conduct that violates federal regulations,[2] but is a violation of California law independent of the FDCA. Consequently, none of Plaintiff's claims are expressly preempted. Plaintiff addresses each claim below.

### a. Negligent and strict liability products liability claims

"[A] plaintiff injured by an allegedly defective product may seek recovery at the same time on alternate theories of strict liability in tort and in negligence, and may obtain jury instructions on both theories." *Milwaukee Electric Tool Corp. v. Superior Court*, 15 Cal.App.4th 547, 557 (1993) (citing *Jiminez v. Sears, Roebuck & Co.* 4 Cal.3d 379, 387 (1971). "[T]o a large extent the two theories parallel and supplement each other." *Id.* "Strict liability has been invoked for three types of defects—manufacturing defects, design defects, and 'warning defects,' i.e., inadequate warnings or failures to warn." *Anderson v. Owens- Corning Fiberglas Corp.*, 53 Cal.3d 987, 995 (1991).

### i. Design Defect[3]

"Once a device has received premarket approval, the MDA forbids the manufacturer to make, without FDA permission, changes in design specifications, manufacturing processes, labeling, or any other attribute, that would affect safety or effectiveness." *Riegel,* 552 U.S. at 319; 21 U.S.C. § 360e(d)(6)(A)(i); see *Kashani-Matts v. Medtronic, Inc.* 2013 WL 6147032, at *4 (C.D. Cal., Nov. 22, 2013, SACV 13-01161-CJC) (devices manufactured with a different product design then that approved by the FDA would not be subject to preemption).

Here, Plaintiff's design defect claim is premised on Defendants' post-PMA design change. Plaintiff alleges that—in violation of federal regulations—Defendants sold devices manufactured with a different product design then that approved by the FDA; Defendants changed the approved design to add a hydrophilic polymer coating (FAC ¶ 103), use PET fibers

---

[2] Defendants try to limit the violations of federal regulations upon which Plaintiff's may base a parallel claim, asserting that "Plaintiff does not allege in support of any of these claims, however, that Essure *deviated from the PMA requirements* set forth by the FDA, as she must to assert a state law claim 'parallel' to the federal requirements." (MTD at 9:24-26.)  To be clear, a plaintiff's parallel claims are not limited to a manufacturer's violations of the PMA itself, and Defendants provide no authority for creating such a limitation.

[3] Plaintiff concedes that her *strict liability* design defect claim, and this claim only, is not recognized under California law.

and other "non-conforming material" (FAC ¶ 105(c)) and non-sterile cages (FAC ¶ 105(d)). These design changes were not approved by the FDA, as evidenced by the FDA's issuance of notifications regarding these changes. (FAC ¶ 105.)

In other words, Plaintiff's negligent design defect claim parallels the federal requirement regarding the safety of the Essure device and precluding changes to the design after FDA approval. However, a cause of action for negligent design defect exists independent of the FDCA, and Plaintiff's claim is not based on the violation of federal law. As a result, the design defect claim is not expressly preempted.

Nonetheless, should the Court find any merit to Defendants' argument, Plaintiff is prepared to amend her complaint in the following ways: (1) add allegations regarding the specific regulations related to design changes that Defendants violated, as listed above; and (2) allege specifically that Defendants' deviation from the FDA-approved plan and specifications was the cause of Plaintiff's injury.

### ii. *Manufacturing Defect*

A defective manufacturing claim is not preempted insofar as it alleges that the manufacturing of the device both fell short of the FDA's requirements for manufacturing and—based on the same deficiency—was defectively manufactured under California law. *Seedman v. Cochlear Americas,* 15–cv–366, 2015 WL 4768239, at **9-10 (C.D.Cal. August 10, 2015).

FDA requirements provide that a device "shall be deemed to be adulterated" where "the methods used in, or the facilities or controls used for, its manufacture, packing, storage, or installation are not in conformity with applicable requirements" in regulations. 21 U.S.C. § 351(h). Further, 21 C.F.R. § 820.70(a), generally applicable to a variety of medical devices, requires each manufacturer to: "develop, conduct, control, and monitor production processes to ensure that a device conforms to its specifications." 21 C.F.R. § 820.70(h) provides: "Where a manufacturing material could reasonably be expected to have an adverse effect on product quality, the manufacturer shall establish and maintain procedures for the use and removal of such manufacturing material."

In addition, section 360k "does not preempt a State or local requirement prohibiting the manufacture of adulterated ... devices" unless the prohibition would establish "a substantive requirement for a specific device" that conflicts with a federal requirement. 21 C.F.R. § 808.1(d)(6)(ii).

Plaintiff's FAC specifically alleges that Defendant violated these requirements by engaging in non-conforming manufacturing processes including, *inter alia*, using "non-conforming material," failing to use "pre-sterile and post-sterile cages," and failing to "obtain a valid license…prior to manufacturing medical devices." (FAC ¶¶ 16, 68, 105.) And contrary to Defendants' unsupported assertion, Plaintiff also alleges that as a direct and proximate result of her use of the device as manufactured by defendant, she suffered serious physical harm, damages, economic loss and will continue to suffer such harm. (FAC ¶ 117.) Defendants' violations of federal regulations such as these properly form the basis for her parallel claims under California state law. See *Seedman*, 2015 WL 4768239, at **21-25; *Coleman v. Medtronic, Inc.*, 223 Cal.App.4th 413, 428 (2014).

Although Defendant's motion includes no argument specific to the preemption of Plaintiff's claim for manufacturing defect, it contends that Plaintiff fails to attribute her injuries to a manufacturing defect. (MTD 10:12-16.) To the contrary, Plaintiff alleges that Defendants' "wrongful acts or omissions" caused her injuries. (FAC ¶ 21.) Significantly, however, at the pleading stage it need only be plausible that a product defect at issue was the result of defective manufacturing rather than design because "much of the product-specific information about manufacturing needed to investigate such a claim fully is kept confidential by federal law," and that as such, "formal discovery is necessary before a plaintiff can fairly be expected to provide a detailed statement of the specific bases for her claim." *Bausch v. Stryker Corp.*, 630 F.3d 546, 558 (7th Cir. 2010). As the Seventh Circuit reasoned, "the victim of a genuinely defective product ... may not be able to determine without discovery and further investigation whether the problem is a design problem or a manufacturing problem." *Id.* at 560.

Nonetheless, should the Court find any merit to Defendants' argument, Plaintiff is prepared to amend her complaint in the following ways: 1) adding allegations regarding the

specific regulations related to manufacturing that Defendants violated, as listed above; and 2) alleging specifically that Defendants' deviation from the FDA-approved plan and specifications was the cause of Plaintiff's injury.

### iii.    Failure to Warn

In *Stengel v. Medtronic Inc.,* 704 F.3d 1224 (9th Cir. 2013), the Court held that a state law tort claim for failure to warn about risky medical devices was not preempted by the MDA. *Id.* at 1226. The Ninth Circuit described the central issue as "whether the MDA preempts a state-law claim in which the state-law duty of care 'parallels' a federal-law duty imposed by the MDA. *Id.* Plaintiffs brought their claim under "settled Arizona law that protects the safety and health of Arizona citizens by imposing a general duty of reasonable care on product manufacturers." *Id.* at 1233. The Court concluded that Plaintiffs' state-law claim was not preempted because that same duty of care is included in the MDA, albeit with lesser remedies. In so holding, the Ninth Circuit joins the Fifth and Seventh Circuits, "which reached the same conclusion with respect to comparable state-law claims." *Id.*

In a concurring opinion, Judge Watford further explained why the failure to warn claim was not preempted: "[the plaintiffs] alleged that Medtronic breached its duty of reasonable care under Arizona negligence law by failing to report adverse events to the FDA [under 21 C.F.R. § 803.50(a)]. That requirement is not 'different from, or in addition to' the requirements imposed by federal law, because FDA regulations required Medtronic to file an adverse event report with the FDA." *Id.* at 1234, conc. J. Watford; see also *Eidson v. Medtronic, Inc.* 981 F.Supp.2d 868, 891 (N.D. Cal. 2013) (holding the plaintiff's negligence claim for failure to report adverse events to the FDA was not expressly or impliedly preempted); *Michajlun v. Bausch & Lomb, Inc*., No. 14-cv-1365, 2015 WL 1119733, **20-21 (S.D.Cal. Mar. 11, 2015); *Coleman*, 223 Cal. App. 4th 413.

As with Arizona law at issue in *Stengel,* California law creates a duty to warn parallel to 21 C.F.R. § 803.50(a), as a "device manufacturer can be found liable if it 'did not adequately warn of a particular risk that was known or knowable in light of the generally recognized and prevailing best scientific and medical knowledge available at the time of manufacture and

distribution.'" *Coleman*, 223 Cal.App.4th at 428 (quoting *Anderson v. Owens–Corning Fiberglass Corp.*, 53 Cal.3d at 1002). The California duty to warn does not solely run to doctors, but to the FDA as well. *Id.* at 429.

Similarly, in this case, Plaintiffs allege that Defendants failed to comply with its duty under federal law to report all adverse events to the FDA and, by doing so, violated its duty under California law to warn Plaintiff, her physicians, and consumers of the risk of the Essure device. (FAC ¶¶ 44, 143.) More specifically, Plaintiff alleges that Defendants failed to report to the FDA information in its possession that one of its devices "[m]ay have caused or contributed to a serious injury," which violates 21 C.F.R. § 803.50(a). (FAC ¶ 44(d).) *Stengel* demonstrates that a claim alleging a device manufacturer's failure to warn the FDA of something FDA regulations required it to warn about is not preempted—such a failure is both contrary to FDA regulations and California tort law.

Plaintiff further alleges that, had Defendants properly reported the adverse events to the FDA as required under federal law, she would not have had the Essure implanted. (FAC ¶ 18.) If necessary, Plaintiff can amend with additional allegations that the adverse events at issue predated the implantation of Plaintiff's device. Plaintiff can further allege that if Defendants had communicated the adverse-event reports to the FDA as required, such reports would have effectively warned physicians, including Plaintiff's physician, of those adverse events, directly, through discussion of those events that would have followed in the literature, and via the FDA's MAUDE database, which is available to the public at large. Plaintiff can further allege that, with the benefit of the knowledge of the unreported adverse events, her physician would not have recommended and she would not have agreed to implantation of the device.

### iv. Negligent training/entrustment

Although addressed by Defendants only in a footnote, Plaintiff admits that her claim regarding Defendants' negligence in entrusting physicians with specialized hysteroscopic equipment without proper training could have been better developed. Such a claim for negligent training of implanting physicians is specifically recognized in California. *Scott v. C.R. Bard, Inc.*, 231 Cal.App.4th 763, 774 (2014). Plaintiff requests leave to specifically allege that her physician

was negligently trained by Defendants to perform the implantation of the device and that such inadequate training caused him to improperly implant Plaintiff's Essure. This claim is not preempted as explained below.

The hysteroscopic equipment necessary to place Essure was: 1) manufactured by a third party; 2) is not a part of Defendants' PMA; and 3) is not a part of Essure or the Essure delivery system. However, because the hysteroscopic equipment is both necessary to place Essure and extremely expensive, Defendants provided it to the Plaintiff's implanting physician who was unable to use it safely which caused Plaintiff's injuries. The specialized hysteroscopic equipment is so difficult to use that even experts have difficulty using it. Defendants acknowledge this in Essure's Physician Training Manual: "Essure® should be used only by physicians who are knowledgeable hysteroscopists." This type of equipment can be life threatening if not in the hands of an expert hysteroscopist. To ensure that Essure sells, Defendants undertook to train physicians to use the specialized equipment to implant the device. However, Defendants failed to failed to exercise reasonable care in the performance of this undertaking, resulting in a dangerous combination of specialized equipment in the hands of unskilled physicians.

The FDA never approved Defendants' third party contract with the implanting physician, entrusting him with very specialized hysteroscopic equipment and/or training him how to use it. In fact, the FDA expressly excludes "other products" from preemption. 21 C.F.R. 808.1(d)(1) reads:

> Section 521(a) does not preempt State or local requirements of general applicability where the purpose of the requirement relates either to other products [e.g., hysteroscopes] in addition to devices (e.g., requirements such as general electrical codes, and the Uniform Commercial Code (warranty of fitness)), or to unfair trade practices in which the requirements are not limited to devices.

Moreover, nothing in Defendants' PMA of Essure addresses the training of physicians. (Defs' RJN Ex. B [Dkt No. 34-2].) In short, Defendants' training of and entrustment of equipment to physicians is outside the realm of the FDA's oversight. Accordingly, Defendants' argument cannot satisfy the first prong of *Riegel*.

b. Breach of Warranties and Misrepresentations

Plaintiff's breach of implied and express warranties, negligent and fraudulent misrepresentation, and concealment claims—alleging that Defendants made fraudulent statements to promote and warranty the Essure device and concealed material information—are not preempted because they lie parallel to federal requirements.

Under FDA regulations, "[a] device may not be ... advertised in a manner that is inconsistent with any conditions to approval specified in the PMA approval order for the device." 21 C.F.R. § 814.80. Although federal law permits Defendants to engage in advertising beyond the subject device's label, it requires that such representations not be false or misleading. *Scovil v. Medtronic*, 995 F.Supp.2d 1082, 1095–96, 2014 WL 502923, at *10 (D.Ariz. Feb. 7, 2014) (fraudulent and intentional misrepresentation claims not expressly preempted because federal law prohibits false promotion and Arizona law imposes a parallel requirement not to engage in fraudulent misrepresentations that is not different from, or in addition to, the federal requirement); *Eidson*, 981 F.Supp.2d at 884–85; *Kashani-Matts v. Medtronic, Inc.* 2013 WL 6147032, at *5 (explaining that fraud claims based on alleged misrepresentations and omissions made while promoting and marketing a device could survive preemption).

Warranties possess a special place outside of the preemption realm because, unlike the other claims, they do not result from the independent operation of the state law, but, instead, arise from representations of the parties. See *Mitchell v. Collagen Corp.,* 126 F.3d 902, 915 (7th Cir. 1997) ("[S]tate judgment based on the breach of an express representation by one of the parties does not necessarily interfere with the operation of the PMA, and therefore we cannot say that such a cause of action is preempted."). Warranties and representations that are extraneous to FDA approval are not preempted. *Purcel v. Advanced Bionics Corp.*, 2010 WL 2679988, at *6 (N.D. Tex., June 30, 2010, 3:07-CV-1777-M) (holding that an express warranty claim "predicated on federal law and based on Bionics' alleged representations to Plaintiffs, rather than statements that were approved or mandated by the FDA," was not preempted); see also *Prudhel v. Endologix,* Inc. 2009 WL 2045559, at *5 (E.D. Cal., July 9, 2009, CIV S-09-0661LKK/KJM) (noting that "[o]ther courts have held that the MDA preemption analysis turns on whether the language purportedly giving rise to an express warranty was compelled by the FDA, approved by

the FDA, or extraneous to FDA approval," and holding claims involving non-label communications not preempted); *Rattay v. Medtronic Inc.*, 482 F. Supp. 2d 746, 762-63 (N.D.W.V. 2007) (denying motion for summary judgment and explaining preemption depended on whether the express warranty resulted "from a contractual commitment 'voluntarily' undertaken'").

FDA federal regulations also clearly state that warranty claims are not preempted because they are state laws of general applicability, not specifically developed with respect to medical devices. 21 C.F.R. § 808.1(d)(1) (such claims are "not 'requirements applicable to a device' within the meaning of section [360k(a)]").

Lastly, Defendants' conditional PMA order expressly excludes warranties: "CDRH <u>does not evaluate</u> information related to contract liability warranties, however you should be aware that any such warranty statements must be truthful, accurate, and not misleading, and must be consistent with applicable Federal and State laws." (Defs' RJN Ex. B, p. 2 [Dkt No. 34-2].)

Plaintiff's breach of warranty and fraud claims are parallel or "genuinely equivalent" to federal law because there is no likelihood that Defendants could be held liable under state law without having violated the federal law. Defendants provide no evidence that the representations on their website, including that the "correct placement" of the Essure device is "easily performed," the Essure training program is "comprehensive" and provides the "information and skills necessary to … perform competent procedures," that the physicians Defendants train to implant the device are "signed off" and are "skilled operative hysteroscopist[s]," and other representations, had been approved by the FDA at the time of Plaintiff's injuries. (FAC pp. 14-15.) Instead, they point only to a pamphlet from 2014. (See Def.'s RJN Ex. G, Dkt No. 34-7.) Defendants provide no other evidence that the FDA approved the representations and warranties at issue.

Although Defendants have failed to show how any of the alleged warranties were approved by the FDA, assuming they did, even those approved warranties still survive as Plaintiff is not in any way alleging that the label was defective in this claim. Plaintiff's express warranty and misrepresentations claims arise not from "labeling" of the device as it relates to the

safety and effectiveness of it, but from commitments voluntarily undertaken, resulting from Defendants' marketing efforts, and thus arose not by operation of the state and federal law, but by virtue of the warrantor's willingness to guarantee the substantive content thereof. The misrepresentations alleged by Plaintiff were not made to the FDA, but rather, to the general public, to Plaintiff, and to Plaintiff's physician. Accordingly, these claims for breach of warranty and negligent and fraudulent misrepresentation are not preempted.[4]

Further, Plaintiff sufficiently pleads causation, i.e., that she relied on the warranties of Defendants in using Essure. (FAC ¶ 155, 170.)  In any event, should the Court find any merit to Defendants' argument, Plaintiff is prepared to amend her complaint in the following ways: 1) adding allegations regarding the specific regulations regarding warranties and false promotion; and 2) alleging specifically that Defendants' warranties and representations induced Plaintiff to have the Essure device implanted.

## C.    Plaintiff's claims are not impliedly preempted.

The MDA states that all actions to enforce FDA requirements "shall be by and in the name of the United States." 21 U.S.C. § 337(a). The Supreme Court interpreted § 337(a) in *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341 (2001), holding that it means that "the Federal Government rather than private litigants ... are authorized to file suit for noncompliance with the medical device provisions." *Id*. at 349, 121 S.Ct. 1012 fn. 4. In *Buckman*, "the plaintiffs asserted a state law fraud claim based on purported misrepresentations defendants made to the FDA during the PMA process for the medical device at issue.... The Supreme Court held that this claim was impliedly preempted because it sought to enforce an exclusively federal requirement and was not grounded in traditional state tort law." *Stengel*, 704 F.3d at 1235. The claim "existed solely by virtue" of federal requirements. *Buckman*, 531 U.S. at 353, 121 S.Ct. 1012. However,

---

[4] Although Defendants argue in a footnote that they cannot be liable for breach of express warranty because there is no privity of contract with Plaintiff, this is a misstatement of California law. Instead, where the buyer is not in privity with the manufacturer, California law requires a showing that the plaintiff relied on an alleged warranty. *Asghari v. Volkswagen Group of America, Inc.* 42 F.Supp.3d 1306, 1334 (C.D. Cal. 2013). Because Plaintiff here alleges that she relied on the misrepresentations of Defendants (FAC ¶¶ 170, 178), she has properly stated a claim for breach of express warranty. Further, Plaintiff can easily amend to fill in any gaps regarding her reliance on the warranties by Defendants.

courts have made clear that *Buckman* does not mean plaintiffs cannot bring state law claims based on conduct that violates the FDCA. To avoid implied preemption, a claim based on conduct that violates the FDCA must rely on traditional state tort law principles which predate the relevant FDCA requirement.

For that reason, Plaintiff's case is wholly distinguishable from *Buckman*. First, Plaintiff's claims are grounded in traditional state tort law and not solely by virtue of the FDCA. Additionally, Plaintiff's claims are not based on "fraud on the FDA," which would occur during the premarket approval process. Plaintiff's allegations that Defendants failed to disclose adverse events and used nonconforming products *did not occur during the premarket approval process* as was the case in *Buckman*. Unlike in *Buckman*, the allegations at issue occur outside the context of this regulatory process. Plaintiff's allegations are that Defendants violated federal regulations and parallel state law after the conditional approval was awarded to Defendants. In sum, implied preemption does not apply here.

**D.  Plaintiff pleads fraud and concealment with sufficient particularity.**

Defendants argue alternatively that Plaintiffs have not pled these claims with sufficient particularity. (MTD at p. 21.) Federal Rule of Civil Procedure 9(b) requires all fraud claims to be pled "with particularity." In other words, "[a]verments of fraud must be accompanied by the who, what, when, where, and how of the misconduct charged." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir.2009). The allegations must be "specific enough to give defendants notice of the particular misconduct so that they can defend against the charge and not just deny that they have done anything wrong." *Id*.

"The elements of fraud, which gives rise to the tort action for deceit, are (a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage." *Lazar v. Superior Court,* 12 Cal.4th 631, 638 (1996). The tort of negligent misrepresentation does not require scienter or intent to defraud. *Gagne v. Bertran* 43 Cal.2d 481, 487–488 (1954).

Here, Plaintiff has pled facts sufficient to satisfy Rule 9(b). Plaintiff alleges that Defendants and their agents made various representations in organizational publications such as brochures, pamphlets, and Defendants' website. (FAC pp. 13-20.) For example, Plaintiff alleges that she asked questions via Defendants' website of a fictitious person named "Judy" who pretended to have had the Essure device, and Defendants concealed the fact that "Judy" had never, in fact, had the Essure device. (FAC ¶ 97.) Defendants also stated that implanting physicians had adequate training (FAC ¶ 91(c)), there were no pregnancies during the clinical trials (FAC ¶ 91(b)), the procedure was "surgery-free" (FAC ¶ 91(d)), Essure had been in use for five years (FAC ¶ 96), correct placement was "easily performed" (FAC ¶ 94), and many other misrepresentations. Defendants knew or should have known that these statements were false based on post-PMA studies and adverse events, and Defendants hid this knowledge from the FDA, physicians, and Plaintiff. (FAC pp. 13-20.) As a result of these representations, Plaintiff was induced to have the dangerous device implanted, which caused her harm. (FAC ¶¶ 170, 171, 178, 179.) These allegations are "specific enough to give defendants notice of the particular misconduct so that they can defend against the charge and not just deny that they have done anything wrong." *Kearns v. Ford Motor Co.*, 567 F.3d at 1124.

Nonetheless, should the Court find any merit in Defendants' arguments, Plaintiff is prepared to amend her complaint to allege the approximate dates on which she received the warranties and misrepresentations and specifically how they induced her reliance.

**E.      The statute of limitations began to run in late 2014 when Plaintiff learned of the link between a properly-placed Essure device and medical problems.[5]**

A federal court sitting in diversity on a state law claim must apply that state's statute of limitations. *Bancorp Leasing & Fin. Corp. v. Agusta Aviation Corp.*, 813 F.2d 272, 274 (9th Cir.1987). Because the statute of limitations is an affirmative defense, the "defendant has the burden of proving the action is time-barred." *Grisham v. Philip Morris, Inc.*, 670 F.Supp.2d 1014, 1020 (C.D.Cal.2009) (citation omitted). Under California Civil Procedure Code § 335.1, personal injury claims based on defective products are subject to a two-year limitations period.

---

[5] Plaintiff agrees that California law should apply here.

*Soliman v. Philip Morris Inc.*, 311 F.3d 966, 971 (9th Cir.2002). "In ordinary ... actions, the statute of limitations ... begins to run upon the occurrence of the last element essential to the cause of action." *Gutierrez v. Mofid*, 39 Cal.3d 892, 899 (1985) (citation omitted). Therefore, for personal injury claims, the date of accrual of the cause of action is generally the date of physical injury. See *Jolly v. Eli Lilly & Co.*, 44 Cal.3d 1103, 1109 (1988). However, two principle exceptions apply here – delayed discovery and fraudulent concealment – addressed in turn below.

### 1. Delayed Discovery

"An important exception to the general rule of accrual is the 'discovery rule,' which postpones accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action. [Citations.] [¶] A plaintiff has reason to discover a cause of action when he or she 'has reason at least to suspect a factual basis for its elements.' [Citations.]" *Fox v. Ethicon Endo–Surgery, Inc.*, 35 Cal.4th 797, 807 (2005). A potential plaintiff "discovers the cause of action when he at least suspects a factual basis, as opposed to a legal theory, for its elements, even if he lacks knowledge thereof—when, simply put, he at least 'suspects ... that someone has done something wrong' to him [citation], 'wrong' being used, not in any technical sense, but rather in accordance with its 'lay understanding' [citation]." *Norgart v. Upjohn Co.*, 21 Cal.4th 383, 397–98 (1999),fn. omitted; see *Jolly*, 44 Cal.3d at 1109. A "plaintiff whose complaint shows on its face that [her] claim would be barred without the benefit of the discovery rule must specifically plead facts to show (1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence." *Fox v. Ethicon Endo–Surgery, Inc.*, 35 Cal.4th at 808.

"The question when a plaintiff actually discovered or reasonably should have discovered the facts for purposes of the delayed discovery rule is a question of fact unless the evidence can support only one reasonable conclusion." *Ovando v. County of Los Angeles,* 159 Cal.App.4th 42, 61 (2008) (citing *Jolly,* 44 Cal.3d at 1112 ); see also *Ward v. Westinghouse Canada, Inc.*, 32 F.3d 1405, 1408 (9th Cir.1994) ("Under California law, the question of when [the plaintiff] was on inquiry notice of potential wrongdoing is a factual question."); see also *E–Fab, Inc. v.*

*Accountants, Inc. Services,* 153 Cal.App.4th 1308 (2007) ("Resolution of the statute of limitations issue is normally a question of fact. More specifically, as to accrual, once properly pleaded, belated discovery is a question of fact. As our state's high court has observed: 'There are no hard and fast rules for determining what facts or circumstances will compel inquiry by the injured party and render him chargeable with knowledge. It is a question for the trier of fact.' However, whenever reasonable minds can draw only one conclusion from the evidence, the question becomes one of law.") (internal citations and quotation marks omitted).

For example, in *Clark v. Baxter Healthcare Corp.,* 83 Cal. App. 4th 1048 (2008), a nurse suffered adverse reactions (rashes and difficulty breathing) when she wore latex gloves. *Clark*, 83 Cal.App.4th at 1052–53. Clark consulted with an allergist who suggested that she was allergic to the gloves. *Id*. In May 1995, the plaintiff had a serious allergic response to the latex gloves. *Id*. at 1053. By the end of 1995, the plaintiff joined a support group. *Id*. The group gave her a flyer regarding latex allergies litigation, which indicated that there might be a defect in the latex gloves. *Id*.

Clark filed suit against several manufacturers, claiming a defective product. *Clark*, 83 Cal.App.4th at 1053. The manufacturers answered and moved for summary judgment on the grounds that the suit was barred by the statute of limitations. They argued the limitations period began to run when Clark was first aware of her injury and attributed it to latex gloves. *Id*. at 1053. Clark responded that her initial adverse reactions did not put her on notice of any wrongdoing and she believed the gloves were safe until she learned from the support group of the possible manufacturing defect. *Id*. at 1054. The trial court granted summary judgment. *Id*.

The appellate court reversed, finding that there was a triable issue of fact because the record supported two reasonable inferences: (1) the plaintiff "could reasonably have inferred from the advice given her by various doctors and from the severity of the May 1995 acute reaction, caused by gloves she was not wearing, that more than a natural allergy to a natural substance was involved, and that a product defect or a contaminated product could have been a causative factor," or (2) "that she did not become aware of a potential wrongfulness component of her cause of action until more information than the existence of her allergies placed her on

inquiry notice and then was actually gained." *Id.* at 1059–60. If the plaintiff identified the negligent cause of her injuries by May 1995, her action would be time-barred. However, if she was unaware of this negligent cause until the end of 1995, her claim was timely filed. Accordingly, the court denied the defendants' motion for summary judgment

Similarly, in *Nelson v. Indevus Pharmaceuticals, Inc.,* 142 Cal.App.4th 1202, 1204 (2006), the plaintiff started taking the prescription diet drug Fen-phen in January 1997 and used it for one month. The drug was withdrawn from the market in September 1997 based on evidence linking it to valvular heart disease. *Id.* After she stopped taking the drug, Nelson suffered from intermittent heart palpitations, fatigue, and dizziness. In June 2002, she saw an attorney's television ad about the Fen-phen litigation. And in September 2002, an echocardiogram confirmed that Nelson had valvular heart disease. She then contacted the attorney she had seen on television and filed a lawsuit in July 2003. *Id.*

The defendant in *Nelson* moved for summary judgment, arguing that the action was barred by the statute of limitations based on its theory of "'constructive suspicion,'" under which the action accrued when the danger of Fen-phen was publicized. *Nelson*, 142 Cal.App.4th at 1204. The defendant also argued that although it was undisputed that Nelson did not know about the danger of Fen-phen before the spring of 2002, she should have known sooner, when, through newspaper articles, television news reports, and other means, the general public was given information sufficient to arouse suspicion. *Id.* at 1205. Nelson had testified in deposition that before 2002, no doctor had suggested she get an echocardiogram; she never received notification the drug had been withdrawn from the marketplace; the attorney's television advertisement was the only one she had seen concerning Fen-phen use, lawsuits, or claims; and before she saw the advertisement, it had never occurred to her that she was at risk of injury from diet drugs. *Id.* at 1205, fn. 2.

The trial court granted summary judgment, but the appellate court reversed. The appellate court rejected the defendant's constructive suspicion argument, stating, "[A] plaintiff's duty to investigate does not begin until the plaintiff actually has a reason to investigate.... [¶] The statute

of limitations does not begin to run when some members of the public have a suspicion of wrongdoing, but only '[o]nce the plaintiff has a suspicion of wrongdoing.'" *Id*. at 1206.

The *Nelson* court also rejected the defendant's contention that Nelson's symptoms were sufficient to give her reason to investigate and to trigger the limitations period. *Nelson,* 142 Cal.App.4th at 1210. Nelson testified that she had heart palpitations, fatigue, and dizziness in the late 1990's; she asked her doctors about the symptoms, but they never gave her a diagnosis; she never asked whether those symptoms were related to Fen-phen; and no doctor ever told her those symptoms were related to the drug or to valvular heart disease. *Id*. at 1210–11. The court held that symptoms as "common and nonspecific as those Nelson suffered" should not have caused her, as a matter of law, to have to investigate the possibility that she had been injured by Fen-phen. *Id*. at 1211. The court also noted that some of her symptoms predated her use of the drug, that she asked her doctors about her symptoms when the defendant was still selling the drug as a safe drug, and that few media reports discussed valvular heart injury. *Id.;* see also *Unjian v. Berman*, 208 Cal.App.3d 881, 885 (1989) (holding statute of limitations did not begin to accrue in a medical malpractice case "during time that the plaintiff continues under the doctor's care, does inquire about the cause of his apparent injury and is given an explanation calculated to allay any suspicion of negligence on the doctor's part").

Similarly, here, Plaintiff has pled sufficient facts to allege the delayed discovery rule. Plaintiff did not discover her cause of action under late 2014 when her research revealed that Defendants had "done something wrong" to her by negligently designing and manufacturing the Essure device. Just like in *Clark*, she did not become aware of a potential wrongfulness component of her cause of action until more information than the problem with the broken coil placed her on inquiry notice and then was actually gained. She had known about the connection between the *broken* coil and her medical problems since 2012. However, just like in *Nelson* and *Unjian*, Plaintiff relied on her doctor's assurances that the Essure would not cause any more problems after the broken coil was removed because the remaining coil was properly placed and had not migrated or broken. (FAC ¶ 78.) Consequently, she had no reason to suspect that a design defect of the remaining coil was causing her problems until she read, in late 2014, of the

problems other women were having with Essure.

## 2. Fraudulent Concealment

The doctrine of fraudulent concealment tolls the statute of limitations where conduct by the defendant results in concealment of the operative facts that are the basis of the cause of action and the plaintiff fails to discover the concealed facts despite due diligence. *Sagehorn v. Engle,* 141 Cal.App.4th 452, 460-461 (2006). "In articulating the doctrine, the courts have had as their purpose to disarm a defendant who, by his own deception, has caused a claim to become stale and a plaintiff dilatory. [Citations.]" *Regents of University of California v. Superior Court,* 20 Cal.4th 509, 533 (1999).

Here, Plaintiff has pled that Defendants purposefully concealed the known risks of the Essure device, including perforations, pain, and other adverse events. (FAC ¶ 81.) Because of this concealment, Plaintiff was unable to discover the cause of her complications despite inquiries of her doctor, who assured her she would have no additional problems once the broken coil was removed. (FAC ¶¶ 76, 78.) Defendants cannot take advantage of their own fraudulent conduct to deprive Plaintiff of her claims against them.

## F. To the extent the Court finds any of Plaintiff's claims lacking, Plaintiff should be granted leave to amend her complaint.

Federal Rule of Civil Procedure 8(c) requires that a responsive pleading set forth certain enumerated affirmative defenses, as well as any other matter constituting "avoidance or affirmative defense." Fed. R. Civ. P. 8(c). There can be no doubt that MDA preemption is an "avoidance or affirmative defense" within the meaning of Rule 8(c). See *Bausch*, 630 F.3d at 561-62 (MDA preemption is an affirmative defense); *Brannan v. United Student Aid Funds, Inc.*, 94 F.3d 1260, 1266 (9th Cir. 1996) (Fair Debt Collection Practices Act preemption is affirmative defense that must have been raised at the trial court level). In the event a pleading is dismissed for failure to state a claim, leave to amend must be granted unless the court determines that allegations of other facts could not cure the deficiency. *Bonanno v. Thomas,* 309 F.2d 320, 322 (9th Cir.1962). Pleadings need not anticipate or attempt to circumvent affirmative defenses. *U.S. v. McGee*, 993 F.2d 184, 187 (9th Cir. 1993).

Plaintiff here has shown above how her complaint could be amended to more effectively address Defendants' preemption concerns, causation, and fraud particularity. Accordingly, Plaintiff should be afforded opportunity to cure any deficiencies.

## IV.    CONCLUSION

Plaintiff respectfully requests that the Court deny Defendants' motion.

Dated: December 21, 2015          By:      /s/Martin Schmidt
Martin Schmidt, Esq. (SBN 171673)
mschmidt@nationalinjuryhelp.com
SCHMIDT NATIONAL LAW GROUP
4241 Jutland Dr., Suite 200
San Diego, CA 92217
(800) 214-1010

PLAINTIFF'S OPPOSITION TO DEFENDANTS' RENEWED MOTION TO DISMISS;
MEMORANDUM OF POINTS AND AUTHORITIES