1  Alycia A. Degen (SBN 211350)
   adegen@sidley.com
2  SIDLEY AUSTIN LLP
   555 West Fifth Street
3  Los Angeles, CA 90013
   Telephone:  (213) 896-6000
4  Facsimile:  (213) 896-6600

5  *Attorneys for Defendants Bayer HealthCare
   LLC; Bayer Essure, Inc.; and Bayer HealthCare
6  Pharmaceuticals, Inc.*

7  (Additional Counsel on Signature Page)

8

9              **UNITED STATES DISTRICT COURT**

10            **NORTHERN DISTRICT OF CALIFORNIA**

11                   **SAN FRANCISCO**

12  TANYA DE LA PAZ, an individual,          Case No. 3:15-cv-03995-WHA

13            Plaintiff,
                                             **REPLY IN SUPPORT OF RENEWED**
14      vs.                                  **MOTION TO DISMISS PLAINTIFF'S**
                                             **FIRST AMENDED COMPLAINT**
15  BAYER HEALTHCARE LLC, a Delaware
    corporation; BAYER ESSURE, INC., a       HONORABLE WILLIAM H. ALSUP
16  Delaware Corporation; BAYER
    HEALTHCARE PHARMACEUTICALS,              Date:      January 21, 2016
17  INC., a Delaware corporation; and DOES 1- Time:      8:00 am
    10, inclusive,                           Place:     Courtroom 8, 19th Floor
18
              Defendants.
19

20

21

22

23

24

25

26

27

28

---

**TABLE OF CONTENTS**

**Page**

INTRODUCTION......................................................................................................... 1

I.    PLAINTIFF'S CLAIMS FOR DESIGN DEFECT (COUNTS II, III, V) ARE
      EXPRESSLY PREEMPTED AND INSUFFICIENTLY PLED. .................................. 2

II.   PLAINTIFF'S CLAIMS FOR MANUFACTURING DEFECT (COUNTS I,
      II, III, AND V) ARE EXPRESSLY PREEMPTED, IMPLIEDLY
      PREEMPTED, AND INSUFFICIENTLY PLED........................................................ 5

III.  PLAINTIFF'S FAILURE TO WARN CLAIM (COUNT IV) IS
      EXPRESSLY PREEMPTED, IMPLIEDLY PREEMPTED, AND
      INSUFFICIENTLY PLED...................................................................................... 6

IV.   PLAINTIFF CANNOT STATE A VIABLE CLAIM FOR NEGLIGENT
      TRAINING OR ENTRUSTMENT ....................................................................... 9

V.    PLAINTIFF'S BREACH OF WARRANTY AND MISREPRESENTATION
      CLAIMS (COUNTS VI, VII, VIII, IX, AND X) ARE EXPRESSLY
      PREEMPTED AND INSUFFICIENTLY PLED...................................................... 10

VI.   PLAINTIFF'S CLAIMS ARE BARRED BY CALIFORNIA'S STATUTE
      OF LIMITATIONS. .......................................................................................... 13

VII.  PLAINTIFF'S CLAIMS SHOULD BE DISMISSED WITH PREJUDICE............ 15

CONCLUSION ......................................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Beavers-Gabriel v. Medtronic, Inc.*,
  15 F. Supp. 3d 1021 (D. Haw. 2014) ........................................................................7

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ................................................................................................12

*Caplinger v. Medtronic, Inc.*,
  921 F. Supp. 2d 1206 (W.D. Okla. 2013) ...............................................................15

*Carvalho v. Equifax Info. Servs., LLC*,
  629 F.3d 876 (9th Cir. 2010) ..................................................................................15

*Chione v. Medtronic, Inc.*
  No. 14-cv-01043, 2015 WL 2151889 (S.D. Cal. May 7, 2015) ...............................15

*Crowley v. Peterson*,
  206 F. Supp. 2d 1038 (C.D. Cal. 2002) ..................................................................14

*Desabio v. Howmedica Osteonics Corp.*,
  817 F. Supp. 2d 197 (W.D.N.Y. 2011) ...................................................................15

*Eidson v. Medtronic, Inc.*,
  981 F. Supp. 2d 868 (N.D. Cal. 2013) ....................................................................12

*Erickson v. Boston Scientific Corp.*,
  846 F. Supp. 2d 1085 (C.D. Cal. 2011) ..............................................................4, 13

*Gelber v. Stryker Corp.*,
  788 F. Supp. 2d 145 (S.D.N.Y. 2011) ...............................................................10, 12

*Gross v. Stryker Corp.*,
  858 F. Supp. 2d 466 (W.D. Pa. 2012) .....................................................................15

*Hawkins v. Medtronic, Inc.*,
  No. 1:13-cv-00499, 2014 WL 346622 (E.D. Cal. Jan. 30, 2014) .............................6

*Hesik v. Boston Scientific Corp.*,
  No. 1:12-cv-00014, 2014 WL 5644699 (D.S.C. Nov. 4. 2014) ...............................12

*Hinkel v. St. Jude Med., S.C.*,
  869 F. Supp. 2d 739 (E.D. La. 2012) ........................................................................2

*Horowitz v. Stryker Corp.*,
   613 F. Supp. 2d 271 (E.D.N.Y. 2009) .............................................................................2, 12

*In re Hydroxycut Mktg & Sale Practices Litig.*,
   No. 09-md-2087, 2011 WL 3844217 (S.D. Cal. Aug. 29, 2011) ...........................................13

*Kearns v. Ford Motor Company*
   567 F.3d 1120 (9th Cir. 2009) ...............................................................................................13

*Malonzo v. Mentor Worldwide, LLC*,
   No. 14-cv-1144, 2014 WL 2212235 (N.D. Cal. May 28, 2014)...............................................7

*Martin v. Medtronic, Inc.*,
   32 F. Supp. 3d 1026 (D. Ariz. 2014) .......................................................................................7

*In re Medtronic, Inc. Sprint Fidelis Leads Prods. Liab. Litig.*,
   592 F. Supp. 2d 1147 (D. Minn. 2009), *aff'd by* 623 F.3d 1200 (8th Cir. 2010)
   ..........................................................................................................................10, 11, 12, 15

*In re Medtronic, Inc. Sprint Fidelis Leads Prods. Liab. Litig.*,
   623 F.3d 1200 (8th Cir. 2010) .................................................................................................5

*Mitchell v. Collagen Corp.*,
   126 F.3d 902 (7th Cir. 1997) ..................................................................................................12

*Parker v. Stryker Corp.*,
   584 F. Supp. 2d 1298 (D. Colo. 2008)....................................................................................15

*Perez v. Nidek Co., Ltd.*
   711 F.3d 1109 (9th Cir. 2013) ..................................................................................................6

*Plumlee v. Pfizer, Inc.*,
   No. 13-CV-00414, 2014 WL 695024 (N.D. Cal. Feb. 21, 2014) ...........................................14

*Prudhel v. Endologix, Inc.*,
   Civ. S-09-0661, 2009 WL 2045559 (E.D. Cal. July 9, 2009) ................................................12

*Purcel v. Advanced Bionics Corp.*,
   No. 3:07-cv-1777, 2010 WL 2679988 (N.D. Tex. June 30, 2010)..........................................12

*Rattay v. Medtronic, Inc.*,
   482 F. Supp. 2d 746 (N.D. W. Va. 2007) ...............................................................................12

*Riegel v. Metronic, Inc.*,
   552 U.S. 312 (2008)...................................................................................................... *passim*

*Riley v. Cordis Corp.*,
   625 F. Supp. 2d 769 (D. Minn. 2009).........................................................................10, 12, 15

*Scovil v. Medtronic, Inc.*,
  995 F. Supp. 2d 1082 (D. Ariz. 2014) ................................................................12

*Simmons v. Boston Scientific Corp.*,
  No. 12-cv-7962, 2013 WL 1207421 (C.D. Cal. Mar. 25, 2013)................................4

*Stengel v. Medtronic, Inc.*,
  704 F.3d 1224 (9th Cir. 2013) (en banc) ...............................................................8

*Stengel v. Medtronic, Inc.*,
  No. 4:10-cv-318-RCC (D. Ariz. Aug. 18, 2010) ...................................................8

*U.S. v. Ritchie*,
  342 F.3d 903 (9th Cir. 2003) .................................................................................3

*White v. Stryker Corp.*,
  818 F. Supp. 2d 1032 (W.D. Ky. 2011)................................................................15

**State Cases**

*Clark v. Baxter Health Corp.*
  83 Cal. App. 4th 1048 (4th Dist. 2000) ...............................................................14

*Jolly v. Eli Lilly & Co.*,
  44 Cal. 3d 1103 (1988) ........................................................................................14

*Nelson v. Indevus Pharmaceuticals, Inc.*
  142 Cal. App. 4th 1202 (2d Dist. 2006)................................................................14

*Pooshs v. Philip Morris USA, Inc.*,
  51 Cal. 4th 788 (2011) .........................................................................................13

*Rita M. v. Roman Catholic Archbishop*,
  187 Cal. App. 3d 1453 (1986) .............................................................................15

*Unjian v. Berman*,
  208 Cal. App. 3d 881, 885 (2d Dist. 1989)...........................................................15

**Federal Regulations**

21 C.F.R. § 808.1(d)(1)................................................................................10, 12

**Federal Statutes**

21 U.S.C. § 337(a) ...................................................................................................9

**Rules**

Fed. R. Civ. P. 8 .......................................................................................................16

Fed. R. Civ. P. 9(b) ...................................................................................1, 12, 13, 16

Fed. R. Civ. P. 11 .................................................................................................1, 11

Fed. R. Civ. P. 12(b)(6).............................................................................................16

# INTRODUCTION

In her Opposition to Bayer's Renewed Motion to Dismiss Plaintiff's Amended Complaint [D.E. 43] ("Opposition" or "Opp."), Plaintiff concedes that at least one of her claims is not recognized under California law and that other claims "could have been better developed." Opp. at 8 n.3, 12. But she has already had the opportunity to amend her complaint, in response to Bayer's first motion to dismiss which raised nearly identical grounds to those raised here. [D.E. 16, 18]. The persistent deficiencies in her First Amended Complaint [D.E. 21] ("FAC") confirm that her claims are expressly preempted, impliedly preempted, and time-barred, fail to comply with federal pleading requirements, and otherwise fail under state law.

In particular, Plaintiff's Opposition confirms that her claims are premised on impermissible allegations that Essure – despite being a Class III PMA device subjected to rigorous FDA review and approval – is "adulterated;" that Bayer's representations approved by the FDA through the PMA process are nonetheless false and misleading; and that Bayer committed unspecified "violations" of federal law that have no causal nexus to Plaintiff. Plaintiff blatantly mischaracterizes government documents in an attempt to evade federal preemption. As discussed below, her effort to do so does not suffice to state a cognizable claim.

Plaintiff also concedes that her claims are subject to California's two-year statute of limitations, and that "[s]he had known about the connection between [her] broken [Essure] coil and her medical problems since 2012." Opp. at 22 (emphasis omitted). Nothing in her Opposition changes the fact that she had sufficient knowledge of her claims more than two years before filing suit. Whether she knew her *symptoms* would continue does not matter. Her claims are time-barred.

 Finally, Plaintiff hardly addresses Bayer's showing that her claims fail to satisfy *Iqbal/Twombly* or Rule 9(b) pleading requirements. Bayer raised these pleading defects in its first motion to dismiss [D.E. 16] at 21-23. Plaintiff's failure to address, let alone cure, them in her FAC confirms that she is unable to state a viable claim consistent with Rule 11. Accordingly, the FAC should be dismissed with prejudice.

# I. PLAINTIFF'S CLAIMS FOR DESIGN DEFECT (COUNTS II, III, V) ARE EXPRESSLY PREEMPTED AND INSUFFICIENTLY PLED.[1]

Plaintiff acknowledges that Essure is a "Class III Medical Device" that has undergone "a rigorous process of federal review for safety and effectiveness," before receiving premarket approval ("PMA"). Opp. at 3. Any state law claim that Bayer should have used a different design for Essure than the one the FDA approved would impermissibly impose design requirements "different from federal requirements regulating the device" and invoke liability "notwithstanding compliance with the relevant federal requirements,'" (Opp. at 5, 6 (quoting *Riegel v. Metronic, Inc.*, 552 U.S. 312, 330 (2008))), and is therefore expressly preempted.[2]

Perhaps recognizing as much, Plaintiff reinvents her claims in her Opposition. She now advances the baseless argument that her "design defect" claims can proceed based on allegations of "post-PMA change," and that Bayer sold devices "with a different product design th[a]n that approved by the FDA." Opp. at 8.[3] This assertion is patently false and a marked departure from her FAC. That Plaintiff would even argue Defendants "changed the approved design" to "add a hydrophilic polymer coating" and "use PET fibers," Opp. at 8, reflects either a failure to investigate her claims or a blatant disregard for the truth, neither of which belongs in a filed brief. Contrary to Plaintiff's misrepresentation that "[t]hese design changes were not approved by the FDA" (Opp. at 9), both hydrophilic polymer coating and PET fibers have been part of the

---

[1] In her Opposition, Plaintiff divides her arguments according to allegations she asserts pertain to design defect, manufacturing defect, failure to warn, negligent training/entrustment, and breach of warranty/misrepresentations, often relying on allegations that are incorporated by reference into every cause of action in Plaintiff's FAC. Opp. at 8-16. The allegations that pertain to each of these theories are not clearly set forth in Plaintiff's FAC, but Bayer nonetheless replies to the allegations that Plaintiff now claims support each of those theories.

[2] *Accord e.g., Horowitz*, 613 F. Supp. 2d at 280 ("What is clear after *Riegel* is that claims which impose liability as to a PMA-approved medical device, nothwithstanding that device's adherence to the standards upon which it obtained premarket approval from the FDA, are preempted") (internal quotations omitted); *Hinkel v. St. Jude Med., S.C.*, 869 F. Supp. 2d 739, 746 (E.D. La. 2012) (claims are "clearly preempted" where they "seek to impose liability . . . notwithstanding the [product's] compliance with . . . requirements approved by the FDA during the PMA process").

[3] Her argument also appears to conflate design defect and manufacturing defect claims; however captioned, they are preempted by federal law.

1    FDA-approved Essure design since PMA approval in 2002.[4]

2           Further revealing a lack of familiarity with her own FAC, Plaintiff claims that Paragraph

3    103 dealt with Essure's departure from FDA-approved design "in violation of federal

4    regulations." Opp. at 8. But Paragraph 103 does not allege, or have anything to do with, design

5    changes or violations of federal regulations. Rather, it purports to quote PMA Supplement 18, which

6    was filed with and *approved* by the FDA.[5] PMA Supplements are the vehicle through which

7    design changes are proposed and approved by the FDA. *Riegel*, 552 U.S. at 319 ("If the

8    applicant wishes to make such a [design] change, it must submit, and the FDA must approve, an

9    application for supplemental premarket approval, to be evaluated under largely the same criteria

10   as an initial application."). Put simply, Plaintiff's cited support for a "post-PMA change" in fact

11   supports Bayer's preemption arguments, premised on an approved design and approved design

12   changes.

13          Plaintiff also blatantly misrepresents FDA Form 483s and inspection documents

14   concerning alleged "non-conforming materials" and "pre-sterile and post-sterile cages." Opp. at

15   8-9 (citing FAC ¶105(c)-(d)). Even if a Form 483 observation theoretically could constitute

16   evidence of a specific federal violation (which it does not),[6] Plaintiff misrepresents the forms'

17   content.[7] In particular, the Form 483 in question is about whether Conceptus used non-

18   ─────────────────

19   [4] *See, e.g.,* Summary of Safety and Effectiveness Data [D.E. 34-3] at 2; 2002 Advisory
     Committee Transcript (available at

20   http://www.accessdata.fda.gov/scripts/cdrh/cfdocs/cfadvisory/details.cfm?mtg=330); Bayer's
     Supplemental Request for Judicial Notice ("Supp. RJN"), Ex. A at 52.

21   [5] The FDA's approval is properly subject to judicial notice. Supp. RJN at 4 n.3. A list of all
     Essure PMA supplements reviewed and approved by the FDA – including Supplement 18 (listed

22   as P020014 S018) – is reported on the FDA website. *See* Supp. RJN, Ex. B at 2.

23   [6] FDA Forms 483 provide no evidence that Bayer violated a device requirement. Rather, FDA
     explicitly recognizes that "[t]he FDA Form 483 does not constitute a final Agency determination

24   of whether any condition is in violation of the FD&C Act or any of its relevant regulations."
     FDA Form 483 Frequently Asked Questions, available at

25   http://www.fda.gov/ICECI/Inspections/ucm256377.htm (last visited Jan. 6, 2016).

26   [7] *See U.S. v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) ("Even if a document is not attached to a
     complaint, it may be incorporated by reference into a complaint if the plaintiff refers extensively

27   to the document or the document forms the basis of plaintiff's claim. The defendant may offer
     such a document, and the district court may treat such a document as part of the complaint, and

28   thus may assume that its contents are true for purposes of a motion to dismiss under Rule
     12(b)(6)." (internal citations omitted). *See also* Supp. RJN at 4-5.

1  conforming material "*in a validation protocol without adequately documenting the disposition*

2  *of the material*"—not that non-conforming material was actually used in devices manufactured

3  and sold for use by any patients, let alone Plaintiff. Supp. RJN, Ex. C at 1 (emphasis added)

4  (quoted in FAC ¶ 105(c)). More importantly, "[t]he FDA inspection *did not note any*

5  *deficiencies with regard [to] the firm's handling of non-conforming material* . . ." *Id.*

6  (emphasis added). If this is Plaintiff's finest fact of a design defect, her claim is misguided at

7  best, and intentionally misleading at worst. It certainly cannot form the basis for a claim that

8  would survive preemption. *See Riegel*, 552 U.S. at 330.

9      Plaintiff's apparent reliance on a June 2008 form for her allegation that Bayer "no longer

10  uses pre-sterile and post-sterile cages" (Opp. 9 (citing FAC ¶ 105(d))) is likewise baseless.

11  Setting aside that there is no connection between pre-sterile and post-sterile cages and the design

12  of Essure, the form she relies upon deals with *documentation*, not the use of unapproved

13  materials in the design (or manufacture) of Essure. *See* Supp. RJN Ex. D at 1 (referring only to

14  "procedures to control documents") (quoted in FAC ¶ 105(d)). Plaintiff's mischaracterization is

15  evident on the face of the very document upon which she relies and cannot support a claim.

16      In any event, in order to state a non-preempted state-law claim against a Class III PMA

17  device, "a plaintiff must allege that the defendant 'violated a particular federal specification

18  referring to the device at issue,' or identify specific PMA requirements that have been violated."

19  *Simmons v. Boston Scientific Corp.*, No. 12-cv-7962, 2013 WL 1207421, at *4 (C.D. Cal. Mar.

20  25, 2013) (internal citations omitted); Bayer's Memorandum in Support of Renewed Motion to

21  Dismiss [D.E. 33] ("Bayer's Memorandum" or "Bayer Mem.") at 9-10 (collecting cases).

22  Nowhere among the allegations she cites in her Opposition (nor elsewhere in her FAC) does she

23  identify *any* "specific PMA requirement[]" or "a particular federal specification referring to

24  [Essure]." *See* Opp. at 8-9 (identifying allegations on which Plaintiff's design defect claims are

25  purportedly premised); *e.g.*, *Erickson v. Boston Scientific Corp.*, 846 F. Supp. 2d 1085, 1092

26  (C.D. Cal. 2011) ("[A] plaintiff cannot simply incant the magic words '[defendant] violated FDA

27  regulations' in order to avoid preemption. Rather, a plaintiff must allege that the defendant

28  violated a particular federal specification referring to the device at issue, or identify specific

-4-

1  PMA requirements that have been violated.") (internal quotations and citations omitted).

2      A plaintiff also must allege facts to show that any "violations" are causally connected to

3  *her*, but Plaintiff makes no attempt to do so. *See* Bayer Mem. at 8-9; Opp. at 9 (arguing that she

4  can amend her FAC to include a boilerplate allegation that "Defendants' deviation from the

5  FDA-approved plan and specifications was the cause of Plaintiff's injury"). Her failure to do so

6  is not surprising. The documents she references in her FAC themselves demonstrate that FDA

7  was aware of any sterility and material documentation issues by January 2011 and June 2008,

8  respectively, nearly two and over four years before Plaintiff's placement of Essure in September

9  2012. *See* FAC ¶ 73. Even assuming her misstatements were true, any change in, or correction

10  to, Essure's design based on dialogue with FDA occurred prior to Plaintiff receiving Essure.[8] No

11  prior deviation affected Plaintiff, her device, or caused her alleged injuries, as required to make a

12  non-preempted claim. *See* Bayer Mem. at 10-11 (collecting cases), 20-21 (collecting cases).[9]

13      In sum, because Plaintiff does not and cannot provide "concrete allegations that the

14  product sold by [defendant] was not the product design approved in the PMA Supplement," let

15  alone how any violation of a federal requirement caused her particular injuries, her design defect

16  claims are expressly preempted by federal law. *In re Medtronic, Inc. Sprint Fidelis Leads Prods.*

17  *Liab. Litig.*, 623 F.3d 1200, 1206 (8th Cir. 2010).

18  **II.    PLAINTIFF'S CLAIMS FOR MANUFACTURING DEFECT (COUNTS I, II, III,**
        **AND V) ARE EXPRESSLY PREEMPTED, IMPLIEDLY PREEMPTED, AND**
19      **INSUFFICIENTLY PLED.**

20      Without citing any supporting case law, or attempting to distinguish myriad cases

21  rejecting strikingly similar allegations, Plaintiff asserts that her "manufacturing defect"-based

22  claims can proceed based on allegations that Essure is "adulterated." Opp. at 9-10. As set forth

23  in Bayer's Memorandum, because it is FDA's exclusive purview to determine whether an

24  _____

[8] Plaintiff does not, and cannot, allege that any change in, or correction to, Essure's design was
25  *ever* required as a result of these purported "violations," despite FDA being fully informed of
    them by January 2011.

26  [9] Although Plaintiff concedes "only" that Count II of her FAC "is not recognized under
    California law," Pl. Opp. at 8 n.3, Count V is similarly barred to the extent it is based on an
27  allegedly defective design. *See* Bayer Mem. at 22-23 (explaining that "the entire category of
    medical implants available only by resort to the services of a physician are immune from design
28  defect strict liability"); FAC ¶¶ 147-48 (alleging that Essure "was defective in design"). Plaintiff
    provides no argument or explanation as to how that claim can survive dismissal.

1  approved medical device is "adulterated" or "misbranded," Plaintiff's claims are impliedly

2  preempted. *See, e.g., Perez*, 711 F.3d at 1120 (affirming dismissal of state law claim as

3  impliedly preempted because "whether the [devices] were modified so that they were

4  'adulterated' . . . rest[s] within the enforcement authority of the FDA, not this Court") (internal

5  quotations omitted); Bayer Mem. at 13 (collecting cases).

6       To the extent Plaintiff's claims are based on allegations that Bayer used "non-conforming

7  materials" or failed to use "pre-sterile and post-sterile cages," Opp. at 10, as explained, *supra*,

8  she blatantly mischaracterizes the documents from which she quotes in a conspicuous and

9  unavailing effort to evade preemption.[10]

10       Plaintiff also again fails to plead a causal connection between these alleged "defects" and

11  her alleged injuries.  Even setting aside that the documents she quotes reveal FDA's knowledge

12  of the documentation issues by 2008 and 2011, she does not allege that any manufacturing defect

13  manifested in *her* Essure.  She only recites a boilerplate "proximate cause" statement.  Opp. at 10

14  (citing FAC ¶ 117).[11]  But "[w]hat is not alleged is any ***factual content*** that would support the

15  causal nexus."  *Hawkins v. Medtronic, Inc.*, No. 1:13-cv-00499, 2014 WL 346622, at *8 (E.D.

16  Cal. Jan. 30, 2014) (emphasis added); *see* Bayer Mem. at 10-11, 20-21 (collecting cases).  Her

17  manufacturing defect claims should be dismissed.

18  **III.**   **PLAINTIFF'S FAILURE TO WARN CLAIM (COUNT IV) IS EXPRESSLY**
               **PREEMPTED, IMPLIEDLY PREEMPTED, AND INSUFFICIENTLY PLED.**
19

20       Plaintiff claims that she can assert a viable claim for failure to warn because Bayer

21  allegedly failed to report eight perforation events to FDA.  Opp. at 12 (citing FAC ¶ 44(d)).  She

22  is wrong.  She does not and cannot allege any connection between eight reports brought to

23  FDA's attention by January 2011 and her injuries.  *See* Bayer Mem. at 14 n.12.

24       [10] The only allegation that Plaintiff argues is unique to her manufacturing defect theory is that
25  Bayer failed to "obtain a valid license . . . prior to manufacturing medical devices."  Opp. at 10.
   She does not explain how any "license" issue relates to her device or caused her any injury.  In
26  any event, she quotes from the same 2008 document discussed above, which pertains to a license
   for a particular facility, not for the manufacturing of Essure generally, and she does not allege
27  that a facility licensing issue in 2008 had any causal connection to her alleged injuries four years
   later.

28  [11] Plaintiff also cites FAC ¶ 21 (Opp. at 10), but that paragraph contains no causation allegations.

Plaintiff cites FAC ¶ 18 for the notion that "had [Bayer] properly reported the adverse events to the FDA as required under federal law, she would not have had the Essure implanted." Opp. at 12. Her leap in logic does not suffice to state a claim. Plaintiff does not allege, for instance, that if Bayer had timely reported those eight events to FDA, FDA would have changed the approved labeling (which already warned of possible perforation[12]), that the reports would have somehow reached Plaintiff and her physician, or that the information would have changed the physician's recommendation or Plaintiff's decision. *See, e.g., Malonzo v. Mentor Worldwide, LLC*, No. 14-cv-1144, 2014 WL 2212235, at *3 (N.D. Cal. May 28, 2014) (dismissing claim based on failure to report adverse events to FDA, because plaintiff did not sufficiently allege how that failure resulted in her injuries); *Martin v. Medtronic, Inc.*, 32 F. Supp. 3d 1026, 1043 (D. Ariz. 2014) (similar); *Beavers-Gabriel v. Medtronic, Inc.*, 15 F. Supp. 3d 1021, 1040 (D. Haw. 2014) (similar); Bayer Mem. at 10-11 (collecting cases).

Plaintiff's inability to create a causal connection is not surprising. Her allegations are derived from the same FDA Form 483 discussed above. *See* Supp. RJN, Ex. C at 1; FAC ¶ 44(d). The document she quotes is dated January 2011, and demonstrates, at the very least, that FDA was made aware of these adverse events nearly two years before Plaintiff received Essure in September 2012.[13] Supp. RJN, Ex. C at 1. Plaintiff does not, and cannot, explain how information allegedly discovered by FDA by January 2011 misled her into having a procedure nearly two years later. And, in reality, FDA becoming aware of the eight reports resulted in no changes to the product information—perforation was and still is a labeled event.

The Ninth Circuit's opinion in *Stengel v. Medtronic, Inc.*, 704 F.3d 1224 (9th Cir. 2013) (*en banc*)—upon which Plaintiff principally relies (Opp. at 11-12)—is instructive on this point.[14] In *Stengel*, a majority of the *en banc* panel recognized that, to prevail on a failure-to-warn claim

---

[12] Instructions for Use, RJN, Ex. D at 1 [D.E. 34-4 at 3]; Patient Information, RJN, Ex. G at 7 [D.E. 34-7 at 5].

[13] Additionally, as noted *supra*, a Form 483 does not constitute an FDA finding that Bayer violated a federal requirement.

[14] Bayer respectfully submits that *Stengel* was wrongly decided, and is irreconcilable with the United States Supreme Court's decisions in *Riegel* and *Buckman*, but that is immaterial for present purposes, because even under *Stengel* Plaintiff's failure-to-warn claims fail for the reasons stated in the text.

premised on an alleged failure to provide post-sale warnings to the FDA, a plaintiff must "prove that if [the device manufacturer] had properly reported the adverse events to the FDA as required under federal law, that information would have reached [the patient's] doctors in time to prevent his injuries." *Id.* at 1234 (Watford, J., joined by Kozinski, C.J., and Thomas, Silverman, Graber, McKeown, and Gould, JJ., concurring). Although "the [plaintiffs'] allegations of causation" in that case were deemed "adequate" (*id.* at 1235), that is only because the adverse events at issue were new. The complaint at issue there contained far more detailed factual allegations than Plaintiff's complaint here. The patient in *Stengel* was paralyzed in 2005 after a granuloma allegedly formed at the tip of an implanted catheter. In their proposed amended complaint, the *Stengel* plaintiffs, relying on a detailed warning letter (not Form 483) issued by the FDA, specifically alleged: (1) that the defendant manufacturer "was or should have been aware as early as 2002 or 2003 that the tip of its catheter could produce granulomas in a certain number of patients"; (2) that the patient's doctor "did not diagnose the cause of [the patient's] neurological symptoms" because he "was unaware that [the] defendant's product could cause a granuloma to form at its catheter tip"; and (3) that had the manufacturer issued a warning in 2002 or 2003, "such warning … would have caused … physicians and patients to take proper precautions to determine whether granulomas were forming and would have enabled patients, including Plaintiff …, to avoid the serious spinal cord injuries that resulted." Substitute Am. Compl. ¶¶ 7, 10, 19, 21 (Dkt. No. 22-1), *Stengel v. Medtronic, Inc.*, No. 4:10-cv-318-RCC (D. Ariz. Aug. 18, 2010). The adverse events at issue were about previously unknown potential complications.

The allegations here are vastly distinguishable. Plaintiff cannot explain how adverse events the FDA **was** aware of long before her Essure placement, regarding a risk that **was** already warned of in the FDA-approved Essure physician and patient labeling, and that Plaintiff **does not** allege she experienced (FAC ¶¶ 71-81), could have caused her alleged injuries. This case does not fit *Stengel*. Her failure to warn claims should be dismissed with prejudice.[15]

---

[15] Although the foregoing is sufficient grounds to dismiss these claims with prejudice, Plaintiff's claims are also impliedly preempted. Plaintiff attempts to distinguish *Buckman* on the basis that it involved events that occurred "during the premarket approval process," whereas "Plaintiff's allegations are that [Bayer] violated federal regulations … after the [PMA] approval was awarded." Opp. at 17. She cites no case law that supports her asserted distinction, however, and

**IV. PLAINTIFF CANNOT STATE A VIABLE CLAIM FOR NEGLIGENT TRAINING OR ENTRUSTMENT.**

Plaintiff concedes that "her claim regarding Defendants' negligence in entrusting physicians with specialized hysteroscopic equipment without proper training could have been better developed,"[16] and "requests leave to specifically allege that her physician was negligently trained by Defendants to perform the implantation of the device and that such inadequate training caused him to improperly implant Plaintiff's Essure." Opp. at 12-13. The time for Plaintiff to make such allegations was in her FAC; Bayer raised these very same arguments in its first motion to dismiss. [D.E. 16] at 7 n.8. If Plaintiff could not cure the allegations in her FAC, there is no reason to think she could now allege facts to make the foregoing assertions plausible, let alone connected to her injuries.

In any event, her claim is squarely preempted. It rests on the faulty premise that "nothing in [Bayer's] PMA of Essure addresses the training of physicians." Opp. at 13. Plaintiff is wrong. She ignores the FDA-approved Essure Physician Instructions for Use, which provide directions regarding placement of the device and use of hysteroscopic equipment. *See* Instructions for Use, RJN, Ex. D at 4 [D.E. 34-4 at 6]. She ignores that the Essure Physician Training Manual was submitted to and approved by FDA as part of the PMA and includes information on "Essure Placement Procedure" using a hysteroscope. *See id.* (referring to and incorporating "Physician Training Manual"); Physician Training Manual (Supp. RJN, Ex. E) Section 7, 1-10. She ignores that FDA required Bayer to provide training, within specific parameters, as part of its PMA-approval. *See* Instructions for Use, RJN, Ex. D at 4 [D.E. 34-4 at 6]. She ignores that as part of its PMA, FDA required a Post-Marketing Study to determine the effectiveness of physician training and training materials used with the device. Bayer Mem. at

---

the Medical Device Amendments impose reporting requirements regarding adverse events both before and after PMA-approval. *See Riegel*, 552 U.S. at 319 (citing 21 C.F.R. § 804.50(a), 814.84(b)(2)); Bayer Mem. at 5 n.3. Whether the challenged conduct (or failure to act) occurred before or after Essure received approval, any action to enforce the FDCA "shall be by and in the name of the United States" and Plaintiff's attempt to enforce the MDA's reporting requirements is impliedly preempted. 21 U.S.C. § 337(a); Bayer Mem. at 12-13.

[16] It is unclear from the FAC whether Plaintiff's allegations regarding negligent training or entrustment pertain to *any* of her causes of action.

12 n.9.  Plaintiff does not allege that Bayer, in its relations with her doctor, deviated from these PMA-approved materials, Opp. at 12-13, and any claim that Bayer should have conducted training different from or in addition to that required by FDA is preempted.  *See* Bayer Mem. at 12 n.9 (collecting cases).

Finally, to the extent Plaintiff relies on 21 C.F.R. § 808.1(d)(1) to assert a negligent training or entrustment claim, *see* Opp. at 13, courts have rejected the argument that this provision allows otherwise barred claims to survive preemption.[17]

## V.  PLAINTIFF'S BREACH OF WARRANTY AND MISREPRESENTATION CLAIMS (COUNTS VI, VII, VIII, IX, AND X) ARE EXPRESSLY PREEMPTED AND INSUFFICIENTLY PLED.

Plaintiff alleges in Counts VI through X of her FAC that statements made on Bayer's website and elsewhere were false and misleading, despite FDA's approval of nearly identical statements as part of the Essure PMA.  *See* Bayer Mem. at 11-12.  Because a jury would need to supplant FDA's determination that these statements are permissible (or even *required*) in order to find Bayer liable, Plaintiff's claims are expressly preempted.  *See id.*

In response, Plaintiff complains that Bayer has not cited FDA-approved documents containing *all* of the representations in her FAC.  Opp. at 15.  Plaintiff, of course, does not allege that she saw *all* of the representations in her FAC; she does not even attempt to specify which representations are at stake, let alone when or where she saw them.  Her conclusory statements that she "reasonably relied on" Bayer's representations (Opp. at 16 (citing FAC ¶¶ 155, 170)) cannot overcome her failure to allege *facts* indicating which, if any, of these alleged representations she ever saw, when she saw them, or how they caused her injuries.[18]  Her claims

---

[17] *See, e.g., In re Medtronic, Inc. Sprint Fidelis Leads Prods. Liab. Litig.*, 592 F. Supp. 2d 1147, 1164 (D. Minn. 2009), *aff'd by* 623 F.3d 1200 (8th Cir. 2010); *Riley v. Cordis Corp.*, 625 F. Supp. 2d 769, 789 (D. Minn. 2009); *Gelber v. Stryker Corp.*, 788 F. Supp. 2d 145, 154 n.3 (S.D.N.Y. 2011).  Indeed, the Supreme Court questioned in *Riegel* whether  § 808.1(d)(1) "could play a role in defining the MDA's pre-emptive scope" at all, 552 U.S. at 328, and concluded that the regulation "can add nothing to our analysis but confusion."  *Id.* at 329.

[18] Plaintiff's counsel should be mindful of Rule 11's obligations when alleging, for example, that Plaintiff relied upon alleged warranties in the FDA's Summary of Safety and Effectiveness Data (FAC ¶ 102); PMA Supplement 18 (which is not published) (¶ 103); SEC filings (¶¶ 104, 105); or by "agents" (¶¶ 94, 95).

thus do not satisfy federal pleading standards, let alone escape federal preemption.  *See* Bayer

Mem. at 10-11; 20-21.

Moreover, like the examples discussed in Bayer's Memorandum (Bayer Mem. at 11),

each of the representations Plaintiff mentions in her Opposition is nearly identical to PMA-

approved statements.  *Compare* Opp. at 15 (identifying representations allegedly made on the

Essure website) *with* Physician Training Manual (Supp. RJN, Ex. E), Section 1, p. 1 ("**The**

**Physician Training Program** is a **comprehensive course** designed to provide you with

**information and skills necessary** to select appropriate patients, **perform competent**

**procedures**, and manage possible technical issues related to placement of Essure micro-inserts

for permanent birth control"), Section 2, p. 2 ("Conceptus believes that physicians who are

knowledgeable in hysteroscopy will find Essure procedures **relatively easy to perform"**),

Section 1 p. 2 (training requirements include being a "**knowledgeable hysteroscopist** (prior to

Essure training)," and physicians must complete "training requirements" before "perform[ing]

the procedure") (emphasis added).  As a result, Plaintiff's allegation that these representations

are false and misleading is belied by FDA approval, which expressly preempts them.  Bayer

Mem. at 11-12.  She has not identified any statement that does not correspond to an FDA-

approved statement.

Plaintiff's argument that "misrepresentations alleged by Plaintiff were not made to the

FDA, but rather, to the general public, to Plaintiff, and to Plaintiff's physician" is a distinction

without a difference.  Where state law claims challenge representations about a Class III PMA

device made "in both the product label *and in publications, . . . the internet, and other*

*communications* intended for physicians, medical patients, and the general public," they are

preempted if "[a] jury finding in Plaintiffs' favor on such claims" would contravene FDA's

determination "when granting PMA."  *In re Medtronic, Inc.*, 592 F. Supp. 2d at 1164 (emphasis

added).[19]  Because FDA has approved the same, or nearly identical, representations alleged here,

---

[19] None of the cases that Plaintiff cites (Opp. at 14-15) permit claims to survive where they are
based on representations approved by the FDA as part of the PMA process, and pertain to
products that do not deviate from PMA specifications.  *See, e.g., Scovil v. Medtronic, Inc.*, 995 F.
Supp. 2d 1082, 1096-97 (D. Ariz. 2014) (addressing misrepresentation claims based on off-label
promotion); *Eidson v. Medtronic, Inc.*, 981 F. Supp. 2d 868, 883-885 (N.D. Cal. 2013)

a jury finding that any of these statements constitutes a misrepresentation would contradict FDA's approval, and as a result, the claims cannot stand. *See* Bayer Mem. at 12 (collecting cases); *Riegel*, 552 U.S. at 318 ("FDA . . . must determine that the proposed labeling is neither false nor misleading"); *see also* Opp. at 3 (conceding that "FDA reviews the device's proposed labeling to determine that the proposed labeling is neither false nor misleading").

Although Plaintiff additionally argues that 21 C.F.R. § 808.1(d)(1) exempts breach of warranty claims from preemption, *see* Opp. at 15, she cites no cases in support of her position, and ignores the multitude of case law rejecting this same argument. *See, e.g., Riegel*, 552 U.S. at 329-30; *In re Medtronic, Inc.*, 592 F. Supp. 2d at 1164; *Riley*, 625 F. Supp. 2d at 789; *Gelber*, 788 F. Supp. 2d at 154 n.3; *Horowitz*, 613 F. Supp. 2d at 284, n.6; *Hesik v. Boston Scientific Corp.*, No. 1:12-cv-00014, 2014 WL 5644699, at *9 (D.S.C. Nov. 4. 2014).[20]

Her negligent misrepresentation, fraudulent misrepresentation, and fraud by concealment claims should be dismissed for the additional reason that Plaintiff fails to comply with Rule 9(b). She does not attempt to address case law that requires her to "specify when [s]he was exposed to" Bayer's representations, *Kearns*, 567 F.3d at 1126, "which ones [s]he found material," *id.*, and "which material [s]he relied upon . . ." *In re Hydroxycut Mktg & Sale Practices Litig.*, No. 09-md-2087, 2011 WL 3844217, *3 (S.D. Cal. Aug. 29, 2011); Bayer Mem. at 21-22. Instead, she points yet again to inadequate, boilerplate recitations of reliance and causation that do not

(dismissing claims based on FDA-approved labeling statements, and only allowing misrepresentation claims to survive for off-label promotion); *Mitchell v. Collagen Corp.*, 126 F.3d 902, 915 (7th Cir. 1997) (holding only that breach of express warranty claims are "not *necessarily*" preempted, but granting summary judgment for defendant because plaintiff failed to identify "the nature of any express warranty"); *Purcel v. Advanced Bionics Corp.*, No. 3:07-cv-1777, 2010 WL 2679988, at *6 (N.D. Tex. June 30, 2010) (containing sufficient allegations that defendant's product deviated from the PMA specifications, such that representations were false); *Prudhel v. Endologix, Inc.*, Civ. S-09-0661, 2009 WL 2045559, at *5 (E.D. Cal. July 9, 2009) (recognizing that courts have held that "express warranty claims are preempted whenever they are based on language approved by the FDA," and rejecting claims on other grounds); *Rattay v. Medtronic, Inc.*, 482 F. Supp. 2d 746, 763 (N.D. W. Va. 2007) (declining to address whether breach of warranty claim was preempted"[b]ecause it is unclear what language or statements [plaintiff] relies on to bring his breach of express warranty claim").

[20] Plaintiff asserts that no privity is required for her breach of warranty claims so long as "the plaintiff relied on the alleged warranty." Opp. at 16. As set forth above, Plaintiff does not sufficiently plead reliance, and her boilerplate recitation of reliance cannot overcome the privity requirement. *See, e.g., Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007).

satisfy Rule 9(b).[21]  Opp. at 18 (citing FAC ¶¶ 170, 171, 178, 179).  *See* Bayer Mem. at 21-22.  These claims should be dismissed.

## VI. PLAINTIFF'S CLAIMS ARE BARRED BY CALIFORNIA'S STATUTE OF LIMITATIONS.

Plaintiff acknowledges that California's two-year statute of limitations applies to her claims, Opp. at 18, n.5, and that despite waiting until September 2, 2015 to file her original complaint, "[s]he had known about the connection between the broken coil and her medical problems since 2012." *Id*. at 22 (emphasis omitted).  She argues that the discovery rule and fraudulent concealment tolled her claims because (1) she believed that "Essure would not cause any *more* problems after the broken coil was removed" (Opp. at 22 (emphasis added); FAC ¶¶ 76-77), and (2) she did not discover that Bayer "had 'done something wrong' to her" until 2014, "when she learned, through internet research, of many other women having similar issues" (Opp. at 22; FAC ¶ 78).  Neither assertion sidesteps the statute of limitations.  *E.g., Erickson*, 846 F. Supp. 2d at 1095 (discovery rule did not toll plaintiff's claims where he suspected that there was "something wrong" with his pacemaker after it was prematurely removed, because "suspicions concerning the proper functioning of" the device were sufficient for the statute of limitations to run).

Plaintiff does not attempt to address the case law salient to her mistaken belief that "she would no longer have any symptoms" after her February 2013 device removal.  FAC ¶ 76.  This case law provides that uncertainty as to "whether additional injuries will later become manifest," *Pooshs v. Philip Morris USA, Inc.*, 51 Cal. 4th 788, 797 (2011), and more "substantial injuries" that arise from the same alleged conduct as a plaintiff's earlier injuries, *Crowley v. Peterson*, 206 F. Supp. 2d 1038, 1044 (C.D. Cal. 2002), do not toll the statute of limitations.  Bayer Mem. at 19-20.  Accordingly, whether Plaintiff believed "Essure would not cause any more problems after the broken coil was removed" does not matter because she knew about the "connection

---

[21] Plaintiff identifies in her Opposition only a single representation that she is alleged to have seen (Opp. at 18, referencing allegations regarding "Judy"; FAC ¶ 97).  Conspicuously absent are any allegations that she relied upon the alleged misimpression that "Judy" was an Essure user, and there are no allegations that "Judy" said anything to Plaintiff about Essure that allegedly was untrue, let alone that Plaintiff relied upon to her detriment.

between [her] broken [Essure] coil and her medical problems since 2012." Opp. at 22. The

continuation of her same "symptoms" (*id.* ¶ 76) does not save her claims.[22]

Similarly, although Plaintiff argues that research in 2014 "revealed that [Bayer] had

'done something wrong' to her by negligently designing and manufacturing the Essure device,"

Opp. at 22, her FAC does not support it. There she alleges only that she "learned, through

internet research, of many other women having similar issues." FAC ¶ 78. Under the case law,

which Plaintiff ignores, discovery of *other* individuals' problems does not mean one was unable

to discover one's *own* cause of action earlier. *See Plumlee v. Pfizer, Inc.*, No. 13-CV-00414,

2014 WL 695024, at *9 (N.D. Cal. Feb. 21, 2014) (claims were not tolled where plaintiff

allegedly failed to investigate or bring her claims earlier because she "thought [defendant's drug]

was only ineffective for her"); Bayer Mem. at 20 n.16. And there is no requirement that she

"discover" the specific theory of wrong before the statute of limitations starts to run. *Jolly v. Eli

Lilly & Co.*, 44 Cal. 3d 1103, 1112-1114 (1988).

None of the cases on which Plaintiff relies supports a different conclusion. *See* Opp. at

20-22. *Clark v. Baxter Healthcare Corp.*, for example, involved a plaintiff who believed that her

"natural allergy" was causing her injuries. 83 Cal. App. 4th 1048, 1059 (4th Dist. 2000).

Similarly, *Nelson v. Indevus Pharmaceuticals, Inc.* involved a plaintiff who did not suspect, let

alone possess actual *knowledge*, that any of his injuries were caused by the defendant's weight

loss drug, because he only suffered from "common and non-specific symptoms." 142 Cal. App.

4th 1202, 1211 (2d Dist. 2006). And *Unjian v. Berman* involved a doctor alleged to have

provided an "explanation calculated to allay any suspicion of negligence on the doctor's part."

208 Cal. App. 3d 881, 885 (2d Dist. 1989). Unlike each of these cases, Plaintiff not only

suspected, but admittedly knew more than two years before filing suit, that Essure allegedly was

causing the same alleged injuries she claims she continued to suffer. Accordingly, she provides

no valid grounds for the Court to explain away her delay and apply the discovery rule or tolling

---

[22] Plaintiff does not allege that the continuing pain she suffered following removal of her broken coil was a separate and distinct, or latent, injury. Rather, she alleges only that she suffered from the same "medical problems" that she already knew in 2012 were "connect[ed]" to her device. Opp. at 22; FAC ¶¶ 74, 77.

1    based on fraudulent concealment, and her claims are time-barred. *E.g., Chione v. Medtronic,*

2    *Inc.* No. 14-cv-01043, 2015 WL 2151889, at *4 (S.D. Cal. May 7, 2015) (discovery rule requires

3    plaintiff to "specifically plead facts to show . . . the inability to have made earlier discovery

4    despite reasonable diligence"); *Rita M. v. Roman Catholic Archbishop*, 187 Cal. App. 3d 1453,

5    1460 (1986) ("fraudulent concealment does not come into play, whatever the lengths to which a

6    defendant has gone to conceal the wrongs, if a plaintiff is on notice of a potential claim").

7    **VII.    PLAINTIFF'S CLAIMS SHOULD BE DISMISSED WITH PREJUDICE.**

8            Plaintiff has already enjoyed a full opportunity to attempt to cure the defects in her

9    complaint when she amended in response to Bayer's original motion to dismiss [D.E. 16] on

10   virtually identical grounds to those raised here. Plaintiff's Opposition confirms that further

11   amendment would be futile. *E.g., Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 892-93

12   (9th Cir. 2010) (affirming dismissal with prejudice because of "repeated failure to cure

13   deficiencies by amendments previously allowed . . . [and] futility") (internal quotations omitted).

14   "[T]he issue of federal medical device preemption is a question of law and may properly be

15   decided on a motion to dismiss prior to any discovery being conducted." *Caplinger v.*

16   *Medtronic, Inc.*, 921 F. Supp. 2d 1206, 1225 (W.D. Okla. 2013). Courts frequently dismiss

17   preempted claims with prejudice, and the same should be done here. *See, e.g., id.* (dismissing

18   preempted claims with prejudice); *Gross v. Stryker Corp.*, 858 F. Supp. 2d 466, 505 (W.D. Pa.

19   2012) (same); *Riley*, 625 F. Supp. at 790 (same); *In re Medtronic*, 592 F. Supp. 2d at 1165-66

20   (same); *Parker v. Stryker Corp.*, 584 F. Supp. 2d 1298, 1303 (D. Colo. 2008) (same); *White v.*

21   *Stryker Corp.*, 818 F. Supp. 2d 1032, 1040 (W.D. Ky. 2011) (same); *Desabio v. Howmedica*

22   *Osteonics Corp.*, 817 F. Supp. 2d 197, 203-05 (W.D.N.Y. 2011) (dismissing preempted claims

23   and denying leave to amend).

24                                      **CONCLUSION**

25           For the foregoing reasons, the Court should dismiss Plaintiff's First Amended Complaint

26   with prejudice pursuant to Rules 8, 9(b), and 12(b)(6).

27   //

28   //

Dated: January 7, 2016                    SIDLEY AUSTIN LLP


                                          By:  */s/ Alycia A. Degen*
                                               Alycia A. Degen

                                               Alycia A. Degen
                                               SIDLEY AUSTIN LLP
                                               555 West Fifth Street
                                               Los Angeles, CA 90013
                                               (213) 896-6682
                                               (213) 896-6600 (fax)
                                               adegen@sidley.com

                                               Maja Eaton (*pro hac vice* to be filed)
                                               Elizabeth Curtin (*pro hac vice* to be filed)
                                               SIDLEY AUSTIN LLP
                                               One South Dearborn
                                               Chicago, IL 60603
                                               (312) 853-7123
                                               (312) 853-7036 (fax)
                                               meaton@sidley.com
                                               ecurtin@sidley.com

                                               *Attorneys for Defendants Bayer HealthCare LLC; Bayer Essure Inc.; Bayer HealthCare Pharmaceuticals, Inc.*